Present:  All the Justices

NEW KENT COUNTY

v. Record No. 970236          OPINION BY JUSTICE CYNTHIA D. KINSER
                                          JANUARY 9, 1998

WORLEY AVIATION, INC.

FROM THE CIRCUIT COURT OF NEW KENT COUNTY
Samuel T. Powell, III, Judge


In this appeal, we first consider the jurisdictional
requirements under Code §§ 15.1-550 and 15.1-552 for an appeal
from an action of a county board of supervisors to the circuit
court.  Next, we address whether a lessee of land owned by a
county is entitled, under the terms of the lease, to recover the
fair market value of a capital improvement on the leased
premises.  Because we find that the lessee satisfied the
jurisdictional requirements and constructed a capital improvement
pursuant to a capital improvements plan approved by the board of
supervisors, we will affirm the circuit court's judgment in favor
of the lessee.

I.

In accordance with a Lease Agreement dated January 24, 1985,
New Kent County (the County) leased the New Kent County Airport
to Worley Aviation, Inc., (Worley) for an initial term of ten
years, with a right to renew the lease for an additional ten-year
term under certain conditions.  The lease provisions at issue in
this appeal provided a mechanism by which Worley could construct
a capital improvement on the airport premises and later recover
the fair market value of the improvement if the County did not
renew the lease for an additional term.  Specifically, we are

concerned with portions of Sections VI and VII of the lease.  In

addition to establishing the initial ten-year term of the lease,

commencing on January 1, 1985, and ending on December 31, 1994,

the relevant portion of Section VII includes the following

provisions:

A.  If by December 31, 1989, 1) Lessee submits to Lessor a capital improvements plan for the construction of aviation related facilities on the airport property which plan shall specify the size, type and estimated costs of improvements shown thereon together with a committment [sic] by Lessee to begin construction of such improvements if the plan is approved, and 2) such plan or a variation of the same acceptable to both parties is approved by the Board of Supervisors of New Kent County, and 3) Lessee actually completes construction on the improvements shown in the plan, then Lessee shall have the right to extend the term of this lease until December 31, 2004, provided a written request for such renewal is submitted to Lessor not less than six (6) months nor more than nine (9) months before the end of the initial ten (10) year term. Notwithstanding a written request for extension from Lessee, Lessor reserves the right to terminate this agreement at the end of the initial ten (10) year term provided the provisions of Section VI paragraph D are complied with.  Lessor shall provide written notice of any such termination to Lessee at least six (6) months prior to the end of the term.

Section VI(D), referenced in Section VII, and Section VI(E)

contain the following terms:

D.   If Lessor is found in breach of this agreement or exercises its right to terminate this lease at the end of the first ten (10) year term and if Lessee has constructed capital improvements on the premises pursuant to an approved capital improvements plan as set out in Section VII paragraph A, then Lessor shall pay to Lessee the fair market value of such improvements at the time of such breach or termination.

E.   If lessee fails to exercise a right to renew this lease for an additional ten (10) year term or in the event this lease is terminated because of Lessee's failure to perform or for any other reason other than breach of this agreement by Lessor, then Lessee shall receive no compensation for any improvements constructed by Lessee and Lessee shall have no right to

remove such improvements.

In the event Lessee fails to construct improvements in accordance with the provisions of Section VII paragraph A and Lessor exercises its right to terminate under Section VII paragraph B, then Lessee shall receive no compensation for any improvements constructed by Lessee and Lessee shall have no right to remove such improvements except as set out in Section VII, paragraph C.

In a July 8, 1986, letter, Worley submitted to the County "a capital improvement plan for the construction of aviation related facility in accordance with Section VII of our Lease Agreement." The proposed capital improvement consisted of a new maintenance aircraft hangar along with an office and terminal building. Worley requested approval of the capital improvement plan[1] by the Board of Supervisors of New Kent County (the Board) and also a renewal of its lease to December 31, 2004, in accordance with Section VII(A), provided the capital improvements were completed.

The County's attorney provided copies of Worley's July 8, 1986, letter and plan to the members of the Board. Worley's request for approval was placed on the Board's agenda for its October 20, 1986, meeting:

ITEM 5 – REPORT; REVIEW OF SITE AND CONSTRUCTION PLANS FOR NEW KENT AIRPORT TERMINAL BUILDING AND MAINTENANCE HANGER [sic] – The Board will review plans submitted by Mr. A. C. Worley, New Kent Airport Manager, for construction of a 64' x 80' aircraft maintenance hangar along with a 60' x 24' terminal building. The airport lease agreement requires Board approval of all airport capital improvement projects undertaken by the airport operator – Worley Aviation, Inc.

---

[1] Section VI(A) of the Lease Agreement addresses Worley's right to "construct and/or erect improvements on the premises" with the County's approval. In contrast to Section VII(A), Section VI(A) does not use the term "capital improvement."

After discussion of the plan and a presentation by Worley, the Board approved, as stated in its minutes, "the plans for the new terminal building."[2]

Subsequent to the meeting, the County's attorney advised Worley, in a letter dated October 22, 1986, that the Board had approved "the site and construction plans for the new terminal and hangar building . . . .  These plans were approved by the Board in accordance with Section IV-A of the airport lease agreement."[3]  Accordingly, Worley obtained a building permit and proceeded with construction.  The building inspector issued a certificate of occupancy on January 4, 1988.

However, part of the present dispute concerns whether the construction was in accordance with the approved drawings because Worley included an apartment area in the building.  Those drawings are no longer available, but the building inspector stated that part of his inspection was to ensure compliance with the approved plans.

Several months before the end of the initial ten-year term of the lease, the Board advised Worley that it did not intend to renew the lease for an additional term.  The County relied on its right to terminate the lease at the end of the first ten years provided it complied with Section VI(D) of the Lease Agreement.  Subsequently, the County's attorney advised Worley that the Board

---

[2] The Board did not vote on Worley's request to renew the lease for an additional ten-year term.

[3] The parties agree that the reference to "Section IV-A" in this letter is not correct.

would be contacting it to invoke the appraisal procedure set forth in Section VI(C).[4] Eventually, the County and Worley selected J. Parks Rountrey (Rountrey) as the appraiser for the purpose of establishing the value of the capital improvement on the airport premises. Rountrey described the improvement as a maintenance hangar, office/public building, equipment (fixtures), and site improvements. He opined that the fair market value of the improvement was $480,000 as of December 21, 1994.

Despite the agreement to use Rountrey, a dispute arose between Worley and the County. In a letter dated October 18, 1994, the County's new attorney advised Worley for the first time that the County questioned Worley's claim for the fair market value of the capital improvement on the airport premises. The basis for the dispute was the absence of a reference in the minutes of the October 20, 1986, meeting to the specific section of the Lease Agreement under which the Board approved the capital improvement. Worley then presented its claim to the Board in three separate letters, the last of which included Rountrey's appraisal. But at its January 9, 1995, meeting, the Board denied Worley's capital improvement claim along with other claims unrelated to this appeal.[5]

---

[4] The pertinent portion of Section VI(C) contains the following terms:

> When the "fair market value" of a building or structure or improvement must be determined for purposes of this lease, it shall be established by a qualified appraiser agreed upon by Lessor and Lessee.

[5] The minutes of the January 1995 Board meeting state that "the Lease Agreement . . . does not require the County to compensate Worley Aviation for the terminal building . . . and that the

After the Board's denial, Worley commenced an appeal to the circuit court. According to Worley, it first served a written notice of appeal on the clerk of the Board on February 3, 1995, and posted an appeal bond. Worley then filed its motion for judgment in the circuit court. In its grounds of defense, the County denied that Worley served its written notice of appeal on the clerk of the Board and posted its bond,[6] but the County never brought this issue for hearing before the circuit court.[7]

After ruling on the County's demurrer and motion for partial summary judgment, the circuit court conducted a bench trial. At the trial, the attorney who represented the County at the October 20, 1986, Board meeting testified that he did not recall that the Board approved any capital improvements plan but "simply the plans for the one facility." However, the attorney admitted that the Board approved Worley's plans as submitted. Likewise, a member of the Board testified that the Board approved only the plans for the terminal building and not a capital improvements

---

claimants have failed to establish or prove their claims and have failed to comply with Section 15.1-550 of the Code of Virginia in the presentation of their claims."

[6] The County also mentioned this alleged failure in a footnote in its trial brief and as an exception to the circuit court's final order.

[7] Worley alleged service of the written notice on the clerk of the Board and posting of its bond in paragraphs 12 and 13 of its motion for judgment. It provided additional details about these matters in its answer to the County's interrogatories. The County filed this interrogatory answer as an exhibit with its memorandum in support of its demurrer and motion for partial summary judgment. Worley did not introduce the written notice or bond into evidence before the circuit court.

plan.[8]  Worley, however, testified that it would not have invested its money if the Board's approval had not been pursuant to Section VII(A) of the Lease Agreement.

On November 6, 1996, the circuit court entered a final order in which it found that "Worley constructed certain capital improvements on the demised premises; that the capital improvements were part of a capital improvements plan properly approved by the Board of Supervisors and constructed; and that the fair market value of such improvements was $480,000 at the date of termination of the lease."  We awarded the County an appeal.

## II.

In the County's first assignment of error, it asserts that Worley did not satisfy the jurisdictional requirements of Code §§ 15.1-550 and 15.1-552.  These two sections, along with Code §§ 15.1-553 and 15.1-554, "demonstrat[e] a legislative intent to provide a comprehensive procedure for the presentation, auditing, challenge, defense, and judicial review of monetary claims asserted against a county."  Nuckols v. Moore, 234 Va. 478, 481, 362 S.E.2d 715, 717 (1987).  Furthermore, "Code §§ 15.1-550 et seq. provide the exclusive procedure for litigating claims

---

[8] At the bench trial, several agenda books for the October 20, 1986, meeting were introduced into evidence.  The books belonged to one of the supervisors, the County's administrator, the County's assistant administrator and director of planning, and the County's attorney.  Each of these books contained copies of the agenda, Worley's July 8, 1986, letter, and a staff report recommending that the Board approve "the site plan for the construction but not the request for extension of the lease . . . ."

against a county.  Failure to allege compliance with these statutes is fatal to an action against a county."  <u>Burk v. Porter</u>, 222 Va. 795, 797, 284 S.E.2d 602, 603 (1981) (citations omitted).

Code § 15.1-550 states that "[n]o account shall be allowed by the board of supervisors unless the same shall be made out in separate items and the nature of each item specifically stated."  The County contends that Worley never "specifically stated" its claim to the Board.  It argues that Worley failed to establish that the Board had approved a capital improvements plan and never provided the Board with the site plan, the working drawings, or the specifications for the terminal building.  We disagree with the County.

Worley submitted its claim regarding the capital improvement in three separate letters to the County's attorney.  Included with the last letter dated January 5, 1995, was Rountrey's appraisal, which valued the capital improvement at $480,000, the amount Worley claimed.  Furthermore, the Board's minutes of its January 9, 1995, meeting listed Worley's claim for compensation for the airport terminal building as a separate item.  Worley provided sufficient information for the Board to be apprised of the nature, basis, and amount of his claim.  Thus, we conclude that Worley satisfied the statutory requirements of Code § 15.1-550.

The County's contention that Worley cannot present evidence to the circuit court that it did not present to the Board is also without merit.  "An 'appeal' pursuant to Code § 15.1-552 is a <u>de</u>

_novo_ action at law." Carlo v. County of Nottoway, 232 Va. 1, 3, 348 S.E.2d 201, 202 (1986). While Code § 15.1-552 speaks in terms of an appeal to the circuit court, "the action of the board of supervisors is in no proper sense of the term an adjudication of the claim on its merits . . . ." Luck Constr. Co. v. County of Russell, 115 Va. 335, 338, 79 S.E. 393, 394 (1913). Thus, Worley was not precluded from presenting evidence to the circuit court that it did not present to the Board.

To support its argument that Worley did not comply with Code § 15.1-552, the County relies on Worley's failure to introduce into evidence at the bench trial proof that it served the written notice of appeal on the clerk of the Board and posted an appropriate bond. This section provides that, when the board of supervisors denies a claim, as in this case, the claimant:

> may appeal from the decision of the board to the circuit court of the county within thirty days from the date of the decision . . . . Such appeal may be taken by causing a written notice thereof to be served on the clerk of the board and executing a bond to such county, with sufficient surety to be approved by the clerk of the board . . . .

Code § 15.1-552.

As previously stated, Worley alleged compliance with this provision, but the County denied the allegations. The County did not, however, bring this issue for a hearing before the circuit court, nor did it proffer any reason for the court to question its jurisdiction. Thus, the circuit court never addressed the matter, but decided the claim on its merits. The County does not now assert that Worley did not serve the notice or post bond, but rather that the record on its face does not show Worley's

compliance with Code § 15.1-552.

This Court's decision in <u>Shelton & Luck v. Sydnor</u>, 126 Va. 625, 102 S.E. 83 (1920), controls the resolution of this issue. In that factually analogous case, a board of supervisors allowed a claim for services rendered to the county, and the Commonwealth's Attorney appealed the allowance to the circuit court. The statute under which the appeal was taken required the Commonwealth's Attorney to serve a written notice of appeal on the clerk of the board of supervisors and the party in whose favor the claim had been allowed, within 30 days after the decision. As in this case, it was argued that the written notice of appeal was essential to the circuit court's jurisdiction and that the record failed to disclose timely notice.

In <u>Shelton</u>, we held that the circuit court had jurisdiction to hear the appeal from the board of supervisors:

> There is a legal presumption, in the absence of evidence to the contrary, in favor of the jurisdiction of courts of record of general jurisdiction. The appeal from the decision of the board of supervisors to the circuit court could only be taken in the manner and at the time prescribed by the statute, and, in the absence of any evidence in the record before us to the contrary, we must hold that the statement in the record that the appeal was taken December 1, 1917, means that the appeal was duly taken in the manner and within the time prescribed by the statute . . . . [I]t is not now claimed that notice was not duly served or appearance duly entered, but simply that the record does not on its face show such service or appearance. Under such circumstances every presumption will be indulged in favor of the correctness of the judgment of the circuit court.

<u>Shelton</u>, 126 Va. at 633, 102 S.E. at 86. We further stated in <u>Shelton</u> that "the case appears to have been tried in the circuit court without . . . an objection or exception on that account.

If the notice was not given or appearance entered within the time required by law that fact could have been readily determined if the question had been raised in the trial court." Id. at 634, 102 S.E. at 87.

Like the Commonwealth's Attorney in Shelton, the County did not raise any objection to the circuit court's jurisdiction when it was hearing the case. The County's denial in its grounds of defense is not sufficient. If the County had a basis for believing that Worley did not comply with Code § 15.1-552, it should have squarely presented that issue to the circuit court. Then it would have been incumbent upon Worley to prove that it had, in fact, timely served the notice of appeal and posted bond. Thus, we will apply the presumption enunciated in Shelton and hold that Worley satisfied the notice and bond requirements of Code § 15.1-552.[9]

In the County's final assignment of error, it challenges the lower court's factual findings. The County first argues that the Board never approved a capital improvements plan. The County premises this argument on the fact that the October 20, 1986, meeting agenda and minutes did not include the term "capital improvements plan." It also relies on witnesses' testimony that the Board approved only the construction of the terminal building--not a capital improvements plan.

"As the fact finder, the trial court determines the

---

[9] The County also contends that Worley cannot rely on its interrogatory answer as proof that it complied with Code § 15.1-552. We do not reach this issue since we are not relying on the interrogatory answer in our decision.

credibility of the witnesses and the weight of their testimony; its findings, therefore, will not be disturbed on appeal unless plainly wrong or without evidence to support them."  Bankers Credit Serv. of Vermont, Inc. v. Dorsch, 231 Va. 273, 275, 343 S.E.2d 339, 341 (1986); see also Code § 8.01-680.  Accordingly, we will use this standard to review the circuit court's factual findings.

We agree that the evidence amply supports the trial court's finding that the Board approved a capital improvements plan under Section VII(A) of the Lease Agreement.  When Worley initiated the approval process with its July 8, 1986 letter, it called the new construction a capital improvement plan under Section VII.  Even though the staff report to the Board incorrectly referred to Section IV(A), it also advised the Board that Worley requested approval not only for the construction but also for an extension of the lease until December 31, 2004, in accordance with Section VII(A).  The staff report explained that under Section VII(A), Worley had the right to request the extension if it submitted a capital improvements plan for approval before December 31, 1989.

In addition, while Item 5 on the meeting agenda did not use the phrase "capital improvements plan," it addressed the plans that Worley submitted.  The agenda, along with copies of Worley's letter and the staff report, was in the handbooks belonging to the Board members and to some of the County's staff.  Further, the Board's minutes for the October 20, 1986, meeting reflect that the Board approved Worley's plans.

Several years later, when the Board decided not to renew the

lease for an additional term, it relied on its right to terminate the lease under Section VII, which in turn requires that the provisions of Section VI(D) be followed. Section VI(D) obligates the County to pay Worley the fair market value of capital improvements on the premises that were built pursuant to an approved capital improvements plan. Thus, we conclude that the circuit court did not err in finding that the Board had approved a capital improvements plan under Section VII(A) of the Lease Agreement.

The final factual error alleged by the County involves the lease provision that requires Worley "actually [to] complet[e] construction on the improvements shown in the plan." The County does not dispute that Worley completed the construction. Instead, it claims that the building constructed by Worley was not the construction approved by the Board. However, the plans or drawings that the Board approved are no longer available. If Worley deviated from the approved plans, it actually built more, i.e., an apartment area, than was encompassed by the original plans. Moreover, the building inspector testified that he had reviewed the construction plans before issuing the building permit and had inspected the building before granting Worley a certificate of occupancy. He further stated that part of his inspection had been to verify that the building was constructed according to the approved plans.

For these reasons, we will affirm the circuit court's judgment awarding Worley $480,000 as the fair market value of the capital improvement constructed on the airport premises.

<u>Affirmed.</u>