178 F.3d 231,
15 IER Cases 333
 Kenneth R. EDWARDS, Plaintiff-Appellant,
v.
CITY OF GOLDSBORO; Chester Hill, individually and in his
official capacity; Richard Slozak, individually
and in his official capacity,
Defendants-Appellees.
Professional Fire Fighters & Paramedics of North Carolina;
North Carolina State Lodge of the Fraternal Order
of Police; North Carolina Troopers'
Association; National Rifle
Association, Amici Curiae.
 No. 97-2609.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 3, 1998.
Decided May 14, 1999.
 
 ARGUED: Joseph Michael McGuinness, Elizabethtown, North Carolina, for Appellant. Patricia Lee Holland, Cranfill, Sumner & Hartzog, L.L.P., Raleigh, North Carolina, for Appellees. ON BRIEF: Gregory K. Kornegay, Wilmington, North Carolina, for Appellant. Patrick H. Flanagan, Cranfill, Sumner & Hartzog, L.L.P., Raleigh, North Carolina; W. Harrell Everett, Jr., Everett, Womble & Finan, L.L.P., Goldsboro, North Carolina, for Appellees. M. Travis Payne, Edelstein & Payne, Raleigh, North Carolina, for Amici Curiae Professional Fire Fighters, et al. Robert Dowlut, Fairfax, Virginia, for Amicus Curiae NRA.
 Before ERVIN and HAMILTON, Circuit Judges, and HILTON, Chief United States District Judge for the Eastern District of Virginia, sitting by designation.
 Affirmed in part, vacated in part, and remanded by published opinion. Judge HAMILTON wrote the opinion, in which Judge ERVIN and Chief Judge HILTON joined.
 OPINION
 HAMILTON, Circuit Judge:
 
 
 1
 Kenneth Edwards, a sergeant in the police department for the City of Goldsboro, North Carolina, brought this civil action against the City of Goldsboro (the City), its chief of police, Chester Hill (Chief Hill), and its city manager, Richard Slozak (City Manager Slozak), alleging numerous claims under 42 U.S.C. § 1983 (§ 1983) and the North Carolina Constitution, and one claim under North Carolina common law. In his civil action, Kenneth Edwards (Sergeant Edwards) challenged the decision to suspend him for two weeks without pay and to place him on probationary status for one year following his teaching of a concealed handgun safety course when he had previously been denied permission to do so. He also challenged the decision to condition his continued employment with the police department upon his not teaching the course. The district court dismissed all of Sergeant Edwards' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Sergeant Edwards appeals, and we now affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 Sergeant Edwards began his law enforcement career with the City of Goldsboro Police Department (the Department) in 1975.[1] As part of his duties with respect to the Department, Sergeant Edwards served as a certified firearms instructor for the City and as a law enforcement supervisor of officers patrolling a public housing unit.
 
 
 3
 On July 10, 1995, the North Carolina General Assembly ratified a bill establishing a statewide permitting program for carrying concealed handguns (the North Carolina Concealed Handgun Statute). See N.C. Gen.Stat. §§ 14-415.10 to 415.23 (Supp.1995); William F. Lane, Public Endangerment or Personal Liberty? North Carolina Enacts a Liberalized Concealed Handgun Statute, 74 N.C.L.Rev. 2214, 2215 (1996). One of the prerequisites for obtaining a concealed handgun permit under the North Carolina Concealed Handgun Statute is completion of "an approved firearms safety and training course which involves the actual firing of handguns and instruction in the laws of [North Carolina] governing the carrying of a concealed hand-gun and the use of deadly force."[2] N.C. Gen.Stat. § 14.415.12(a)(4).
 
 
 4
 In early November 1995, as part of his regular employment, Sergeant Edwards attended a firearms-instructor conference at the North Carolina Justice Academy in Salemburg, North Carolina, qualifying him to be an instructor of the concealed handgun safety course. Shortly there after, Sergeant Edwards took steps to teach the concealed handgun safety course in his off-duty hours in an effort to earn extra money to help support his elderly mother and in an effort to express his personal views on and advocacy of firearms safety. These steps included obtaining a business permit in the name of Professional Training Services and scheduling his first class for November 29, 1995. Two days prior to his first scheduled class, on November 27,Sergeant Edwards submitted a standard application for permission to engage in off-duty employment to Chief Hill and informed Chief Hill of the upcoming class. The application explained the nature of Sergeant Edwards' proposed off-duty employment. Chief Hill informed Sergeant Edwards that he would discuss the application with the City Attorney and advise Sergeant Edwards of its status the next day.[3]
 
 
 5
 On November 28, 1995, Chief Hill issued a memorandum addressed to Sergeant Edwards denying his application for off-duty employment In relevant part, the memorandum states as follows:
 
 
 6
 At the present the issue of carrying a concealed handgun is a very sensitive and controversial issue. Most important, it is my duty and obligation as Chief of the Goldsboro Police Department to do what is in the best interest of the department. Therefore, I am denying your request for off duty employment as it relates to the educational training for civilians in firearms courses (carry concealed handguns).
 
 
 7
 (J.A. 35). On November 29, 1995, Chief Hill also verbally informed Sergeant Edwards that his application for permission to engage in off-duty employment was denied.[4]
 
 
 8
 In response, Sergeant Edwards canceled his first scheduled class and filed a grievance with Major Hobbs of the Department, the Major of Support Services, on November 30, complaining about the denial of his application. Sergeant Edwards addressed the grievance to Major Hobbs in compliance with the chain of command and Department personnel policy. Major Hobbs responded in writing the same day that he lacked authority to approve the application.
 
 
 9
 On December 4, 1995, Chief Hill officially notified Sergeant Edwards by letter that his application for permission to engage in off-duty employment was denied because " 'carrying concealed weapons is a very sensitive and controversial issue.' " (J.A. 109). On December 6, 1995, without any explanation or advance notice, Chief Hill transferred Sergeant Edwards from the position of supervisor of the public housing unit, a position he had held for four years, to the position of line sergeant.
 
 
 10
 On December 9 and 10, 1995, while off-duty, Sergeant Edwards conducted classes with respect to the concealed handgun safety course at a "private place without any connection to the City." (J.A. 110). Then on December 18 and 19, 1995, he requested a hearing before a grievance panel, pursuant to the City's personnel rules and regulations, to address Chief Hill's denial of his application for per-mission to engage in off-duty employment. Sergeant Edwards made the request through Chief Hill and City Manager Slozak.
 
 
 11
 On December 19, 1995, Major Isler notified Sergeant Edwards by telephone to be at Chief Hill's office the next day for a meeting, but told him that he (Major Isler) did not know what the meeting was about The meeting indeed took place the following day with the following persons in attendance: (1) Chief Hill; (2) Major Hobbs; (3)Major Isler; (4) the City Attorney, Harrell Everett (Everett); and (5)Sergeant Edwards, who was not represented by counsel. At the meeting, without giving Sergeant Edwards notice or an opportunity to be heard, Chief Hill abruptly began reading aloud a letter of suspension and probation dated December 20, 1995. In sum, the letter stated: (1)that Chief Hill had advised Sergeant Edwards that his application for permission to engage in off-duty employment was denied as not in the best interest of the Department; (2) Sergeant Edwards engaged in the very type of off-duty employment for which he was denied permission to engage; (3) as a result, Sergeant Edwards was suspended for two weeks without pay and placed on probation for one year; and (4)if Sergeant Edwards again engaged in secondary employment without permission, Chief Hill would recommend his immediate termination as an employee of the City.
 
 
 12
 On January 17, 1996, a grievance hearing by the City's grievance panel was held at City Hall regarding the entire matter, with the following persons in attendance: (1) Chief Hill; (2) Major Hobbs; (3)Everett; (4) the City's personnel director, Al King; (5) a clerk for the City, (6) the chairman of the City's grievance panel, Jack Cannon; (7)two employees of the City; (8) two private citizens; and (9) Sergeant Edwards. On January 22, 1996, the City's grievance panel met without Sergeant Edwards being present. At the meeting, the City's grievance panel ratified Chief Hill's decision to deny Sergeant Edwards' application for permission to engage in secondary employment for the reasons cited by Chief Hill, and thereby impliedly affirmed Chief Hill's suspension of Sergeant Edwards and placement of him on probation for one year.
 
 
 13
 On January 30, 1996, City Manager Slozak sent a letter to Sergeant Edwards upholding the City's grievance panel's decision. This decision by City Manager Slozak served as the final decision of the City regarding Sergeant Edwards' application for permission to engage in off-duty employment and the discipline he suffered as a result of engaging in such off-duty employment without permission.
 
 
 14
 Chief Hill, City Manager Slozak, and the City (collectively the Defendants) have allowed other City employees to engage in off-duty employment and self-employment "and have condoned and ratified such employment without punishment or with substantially less severe or insignificant punishment." (J.A. 114). Sergeant Edwards' complaint lists ten similarly situated employees of the City by name whom the Defendants allowed to engage in various types of off-duty self employment (e.g., consulting on land-use matters, installing tile, and teaching political science at a community college). One of these employees happens to be Chief Hill, who engages in off-duty self-employment as an income tax preparer.
 
 
 15
 On May 24, 1996, Sergeant Edwards filed this action against the Defendants in the United States District Court for the Eastern District of North Carolina. Fairly construed, the complaint alleged a total of seventeen causes of action against the Defendants, with nine brought pursuant to § 1983 and arising under the United States Constitution, seven arising under the North Carolina Constitution, and one arising under North Carolina's common law. The nine claims brought pursuant to § 1983 were: (1) violation of the right to free speech; (2) violation of the right to free association; (3) violation of the right to substantive due process; (4) violation of the right to procedural due process; (5) violation of the right to privacy; (6) violation of the right to bear arms; (7) violation of the right to equal protection; (8) deprivation of occupational liberty interests; and (9) violation of the right to academic freedom.[5] The seven claims under the North Carolina Constitution were: (1) violation of the right to free speech; (2) violation of the right to free association; (3) violation of the right to substantive due process; (4) violation of the right to procedural due process; (5)violation of the right to bear arms; (6) violation of the right to equal protection; and (7) deprivation of occupational liberty interests. The claim under North Carolina's common law alleged that the Defendants' conduct, as alleged in the complaint, contravened the North Carolina public policy exception to the North Carolina at-will employment doctrine.
 
 
 16
 According to Sergeant Edwards, in punishing him for teaching the concealed handgun safety class, the Defendants intentionally, willfully and maliciously singled him out for adverse discriminatory treatment, "because of the content of his firearms course and advocacy, because of [Chief] Hill's personal and political zeal to oppose the lawful possession of firearms and because of [Chief] Hill's desire to promote his own personal political agenda." (J.A. 102). "The acts complained of and edicts of Defendants Hill and Slozak represent the official policy of the City." (J.A. 104).
 
 
 17
 Sergeant Edwards alleged that the Defendants' conduct has caused him to be deprived of wages and other benefits of his employment, including opportunities for promotion. Furthermore, he alleged the Defendants' conduct has caused him to suffer anxiety, emotional distress, humiliation, embarrassment, loss of enjoyment of life, loss of future employment prospects, and has permanently and adversely affected his life and career.
 
 
 18
 On July 31, 1996, the Defendants filed their answer, alleging, among other defenses, various immunities including governmental, sovereign, and qualified immunity. After a significant amount of discovery had taken place, on March 10, 1997, the Defendants filed a Rule 12(b)(6) motion to dismiss. On April 1, 1997, without ruling on the Defendants' Rule 12(b)(6) motion, the district court set the case for trial on October 20, 1997.
 
 
 19
 On April 4, 1997, Sergeant Edwards filed a motion to stay the district court from ruling on the Defendants' Rule 12(b)(6) motion and to convert such motion into a motion for summary judgment. On the same day, Sergeant Edwards filed a motion for leave to file an amended complaint in order to conform his complaint to the evidence. On June 7, 1997, Sergeant Edwards reapplied for permission to teach the handgun safety course. He directed his request to Chief Hill, City Manager Slozak, and Major Szatkowski.
 
 
 20
 On June 17, 1997, the district court impliedly denied Sergeant Edwards' motion to convert the Defendants' Rule 12(b)(6) motion into a summary judgment motion by ordering that the deadline for filing any motions for summary judgment was extended until forty-five days after receipt of its ruling on the Rule 12(b)(6) motion. On August 25, 1997, Chief Hill, City Manager Slozak, and Major Szatkowski denied Sergeant Edwards' second formal request for permission to teach the concealed handgun safety course. On October 7, 1997, Sergeant Edwards filed a motion for leave to file a second amended complaint in order to add the following paragraph:
 
 
 21
 On June 9, 1997, Plaintiff again reapplied for permission to engage in off-duty self employment consisting of instructional classes for civilians, including firearms training and the concealed carry course. Plaintiff directed his request to Defendants Slozak, Hill and Major Szatkowski. Over two months later, on August 25, 1997, Defendants disapproved Plaintiff's request to teach.
 
 
 22
 (J.A. 98).
 
 
 23
 In a published opinion dated October 16, 1997, the district court granted the Defendants' Rule 12(b)(6) motion in toto. See Edwards v. City of Goldsboro, 981 F.Supp. 406 (E.D.N.C.1997). On October 20, 1997, the district court entered final judgment in favor of the Defendants. On October 24, 1997, Sergeant Edwards filed a motion for clarification or reconsideration of the district court's decision to grant the Defendants' Rule 12(b)(6) motion. Sergeant Edwards sought clarification as to whether the district court had dismissed his original complaint or one of his amended complaints. In a short order filed November 10, 1997, the district court denied Sergeant Edwards' motion for reconsideration and clarified that it had dismissed the original complaint, without ruling on Sergeant Edwards' motions to amend In the same order, the district court then denied both motions to amend without explanation. This timely appeal followed.
 
 
 24
 On appeal, Sergeant Edwards challenges the district court's denial of his motions to amend his complaint. He also challenges the district court's dismissal of all of his § 1983 claims arising under the United States Constitution and his claim arising under the North Carolina Constitution alleging abridgment of his occupational liberty interest.[6]
 
 II.
 
 25
 Sergeant Edwards first contends that the district court abused its discretion in denying his motions to amend, because the amended complaints merely sought to conform the pleadings to the evidence and clarify the complaint with more specific facts as a result of admissions made in discovery and did not prejudice the Defendants. We agree.
 
 
 26
 Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ.P. 15(a). The Supreme Court has declared that "this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The law is well settled "that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509(4th Cir.1986). Delay alone is an insufficient reason to deny leave to amend. See id. Rather, the delay must be accompanied by prejudice, bad faith, or futility. See id.
 
 
 27
 We review a district court's decision to grant or deny a party leave to amend for an abuse of discretion. See HealthSouth Rehabilitation Hosp. v. American Nat'l Red Cross, 101 F.3d 1005, 1010 (4th Cir.1996). Furthermore, as long as a district court's reasons for denying leave to amend are apparent, its failure to articulate those reasons does not amount to an abuse of discretion. See id.
 
 
 28
 In this case, Sergeant Edwards first sought leave to amend his complaint in order to address a technical state law immunity issue regarding the waiver of state law immunity due to the purchase of liability insurance and to add some further allegations of fact to the complaint based upon discovery admissions. Primarily, the additional facts dealt with more examples of the City's employees engaging in off-duty self-employment, including the teaching of political science at a community college and the teaching of a self-defense course.
 
 
 29
 Sergeant Edwards filed his second motion for leave to amend his complaint on October 7, 1997. The purpose of his second amended complaint was to add the additional facts allegedly showing that on August 25, 1997, Chief Hill, City Manager Slozak, and Major Szatkowski denied Sergeant Edwards' renewed application to teach the concealed handgun safety course. The Defendants contend the record clearly reflects two obvious reasons for the denial of Sergeant Edwards' motions to amend--delay and prejudice caused by the delay. With respect to prejudice, the Defendants argue that if the district court allowed the amendments, they would have been required to expend a tremendous amount of time and money through discovery and additional research in order to address Sergeant Edwards' new allegations. The Defendants do not contend Sergeant Edwards made the motions in bad faith or that the amendments would have been futile.
 
 
 30
 Sergeant Edwards counters that the delay was unavoidable, because all of the information that he sought to add was unavailable to him until after his original complaint had been filed. For example, Sergeant Edwards asserts that he could not in good faith have pled liability insurance coverage on the part of the City, thereby triggering a waiver of governmental immunity with respect to his state law claims, until he learned of the fact in discovery. As a second example, Sergeant Edwards asserts that he could not have pled the facts regarding the Defendants' denial of his renewed request to conduct the concealed handgun safety course until such events actually took place. He also counters that the potential for prejudice to the Defendants is lacking because: (1) all of the allegations sought to be added in his first amended complaint derived from evidence obtained during discovery regarding matters already contained in the complaint in some form and, except for the allegation that the City carried liability insurance, merely added specificity to those matters; (2) the statute of limitations had not yet run on any parallel claims premised upon his renewed application for permission to engage in off-duty employment; and (3) any parallel claims arose out of the same employment relationship and the same type of factual circumstances as his other claims.
 
 
 31
 We are persuaded by Sergeant Edwards' contentions that the district court abused its discretion in denying his motions to amend his complaint, because even assuming arguendo that Sergeant Edwards delayed in filing his motions to amend, that the Defendants would have been prejudiced by the amendments sought is not obvious from the record as the Defendants contend. See Johnson, 785 F.2d at 509. As Sergeant Edwards correctly points out, all of the allegations sought to be added in his first amended complaint derived from evidence obtained during discovery regarding matters already contained in the complaint in some form and, except for the allegation that the City carried liability insurance, merely sought to add specificity to those matters. Prejudice to the Defendants could hardly flow from such an addition. As for the factual allegations regarding Sergeant Edwards' renewed application for permission to engage in off-duty employment, they arise from the same controversy as the balance of the complaint. Because the statute of limitations had not yet barred Sergeant Edwards from asserting any parallel claims based upon these factual allegations against the Defendants, their inclusion in this lawsuit promotes judicial economy given that all of the legal issues would be identical. In short, that the Defendants would suffer prejudice if both motions to amend were allowed is pure speculation. Accordingly, we reverse the district court's denial of Sergeant Edwards' motions to amend his complaint.
 
 III.
 
 32
 Prior to addressing the propriety of the district court's grant of the Defendants' motion to dismiss Sergeant Edwards' action, we must first address a procedural matter not raised by any party.[7] The Defendants designated their motion as one for dismissal pursuant to Rule 12(b)(6), and the district court treated it as such, even though the Defendants had already answered the original complaint.
 
 
 33
 Rule 12(b) provides that "[a] motion making any [Rule 12(b) ]defenses shall be made before pleading if a further pleading is permitted." Fed.R.Civ.P. 12(b). However, Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted as set forth in Rule 12(b)(6) may be raised "by motion for judgment on the pleadings, or at the trial on the merits." Fed.R.Civ.P.12(h)(2); see 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 at 514-15 (2d ed.1990). Therefore, as a matter of motions practice, the Defendants' motion should be viewed as a Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted. See Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 182 (7th Cir.1986). However, viewing the Defendants' motion as a Rule 12(c) motion does not have a practical effect upon our review, because we review the district court's dismissal de novo and in doing so apply the standard for a Rule 12(b)(6) motion. See Frey v. Bank One, 91 F.3d 45, 46 (7th Cir.1996); Turbe v. Government of V.I., 938 F.2d 427, 428 (3d Cir.1991); Morgan v. Church's Fried Chicken, 829 F.2d 10, 11 (6th Cir.1987); Republic Steel Corp., 785 F.2d at 182; 5A Wright & Miller, supra, § 1367 at 515.
 
 IV.
 
 34
 The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4thCir.1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. See id. Furthermore, when as here, a Rule 12(b)(6)motion is testing the sufficiency of a civil rights complaint, "we must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir.1988) (internal quotation marks omitted) (emphasis added). We do note, however, that for purposes of Rule 12(b)(6), we are not required to accept as true the legal conclusions set forth in a plaintiff's complaint. See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083,1085 (4th Cir.1979).
 
 
 35
 With these principles in mind, we turn to consider the propriety of the district court's dismissal of Sergeant Edwards' various claims.
 
 V.
 
 36
 Sergeant Edwards contends that the district court erroneously relied on Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in dismissing his claims against the City and Chief Hill and City Manager Slozak in their official capacities. Treating Chief Hill and City Manager Slozak in their official capacities as the City, we agree.[8]
 
 
 37
 Under Monell, municipalities are not liable pursuant to respondeat superior principles for all constitutional violations of their employees simply because of the employment relationship. See Monell, 436 U.S. at 692-94. Instead, municipal liability results only "when execution of a government's policy or custom, whether made by its law makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...." Id. at 694. While municipal policy is most easily found in municipal ordinances, "it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir.1987); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("[M]unicipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances.").[9]
 
 
 38
 "[A] § 1983 plaintiff seeking to impose municipal liability must satisfy only the usual requirements of notice pleading specified by the Federal Rules." Jordan v. Jackson, 15 F.3d 333, 339 (4th Cir.1994). Thus, Sergeant Edwards was required under Federal Rule of CivilProcedure 8(a)(2) to provide nothing more than a short and plain statement of his claims giving the City fair notice of what his claims are and the grounds upon which they rest. See id. He is not required under Rule 8(a)(2) to "detail the facts underlying his claims," or "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." Jordan, 15 F.3d at 339.
 
 
 39
 Applying these pleading principles to Sergeant Edwards' second amended complaint reveals that it contains sufficient allegations to avoid dismissal of his § 1983 claims against the City under Monell. Sergeant Edwards' second amended complaint alleges that the City delegated authority to its agents and employees, including Chief Hill and City Manager Slozak, to formulate, develop and administer employment and personnel policies and practices for the City, including those policies and practices that caused Sergeant Edwards the damages he has alleged. The second amended complaint further alleges that the acts complained of and edicts of Chief Hill and City Manager Slozak represent official policy of the City, and that City Manager Slozak's decision to uphold and ratify Chief Hill's decision to deny Sergeant Edwards the right to teach the concealed handgun safety course was a final decision of the City. We have no doubt that these allegations are sufficient to avoid a Rule 12(c) dismissal of Sergeant Edwards' § 1983 claims against the City pursuant to the authority of Monell. Accordingly, we hold the district court erred as a matter of law in dismissing all of Sergeant Edwards' § 1983 claims against the City pursuant to the authority of Monell.
 
 VI.
 
 40
 We next address Sergeant Edwards' contention that the district court erred in dismissing his § 1983 claim alleging the Defendants violated his right to free speech as guaranteed by the First Amendment by: (1) suspending him for two weeks without pay and placing him on probation for one year in retaliation for exercising his claimed rights under the First Amendment to teach the concealed handgun safety course while off-duty and to express his views regarding firearms safety while off-duty; and (2) by threatening him with termination if he resumed teaching the concealed handgun safety course. We agree that Sergeant Edwards' second amended complaint states a claim upon which relief can be granted for violation of his right to free speech as guaranteed by the First Amendment. See Fed. R. Civ.P. 12(b)(6).
 
 
 41
 The First Amendment provides, in pertinent part, that "Congress shall make no law ... abridging the freedom of speech." U.S. Const.Amend.. I.[10] While a public employee does not have a constitutional right to his job, a public employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). It follows, therefore, that a public employer is prohibited from discharging or taking other adverse action against one of its employees on a basis that infringes the employee's constitutionally protected interest in freedom of speech. See Rankin v. McPherson, 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); see also id. at 384 ("Vigilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech."). Furthermore, of relevance in the present appeal, a public employer is prohibited from threatening to discharge a public employee in an effort to chill that employee's rights under the First Amendment. See id. at 384 (" '[T]he threat of dismissal from public employment is ... a potent means of inhibiting speech.' ") (quoting Pickering v. Board of Educ., 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)); Connick, 461 U.S. at 144-45.
 
 
 42
 However, in the public employment context, a public employer "may impose some restraints on job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." United States v. National Treasury Employees Union (NTEU),513 U.S. 454, 465, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995). This is because "[a]s an employer, the government is entitled to maintain discipline and ensure harmony as necessary to the operation and mission of its agencies." McVey v. Stacy, 157 F.3d 271, 277 (4th Cir.1998).
 
 
 43
 In order to determine whether a public employee such as Sergeant Edwards has a § 1983 cause of action for violation of his First Amendment right to free speech, we must balance "the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees" Pickering, 391 U.S. at 568. This test is known as the Pickering balancing test. In the posture of the present appeal, this test calls us first to determine whether, after accepting all of Sergeant Edwards' well-pleaded allegations in his second amended complaint as true and drawing all reasonable factual inferences from those facts in his favor, Sergeant Edwards was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest. See Arvinger v. Mayor and City Council, 862 F.2d 75, 77(4th Cir.1988). If we determine that he was speaking as an employee about a matter of personal interest, rather than as a citizen on a matter of public concern, our analysis stops. See id. If we determine the opposite, however, we proceed to ask whether, after accepting all of Sergeant Edwards' well-pleaded allegations in his second amended complaint as true and drawing all reasonable factual inferences from those facts in his favor, Sergeant Edwards' interest in speaking upon the matter of public concern outweighed the City's interest in providing effective and efficient services to the public. See Stroman v. Colleton County Sch. Dist., 981 F.2d 152, 156 (4th Cir.1992). With respect to the discipline portion of Sergeant Edwards' § 1983 claim alleging a violation of his First Amendment right to free speech, if we answer yes to this question, we then ask whether, after accepting all of Sergeant Edwards' well-pleaded allegations in his second amended complaint as true and drawing all reasonable factual inferences from those facts in his favor, Sergeant Edwards' speech was a substantial factor in the City's decision to suspend him for two weeks without pay and discipline him. See id. We now undertake this analysis.
 
 
 44
 Whether speech involves a matter of public concern is a question of law to be determined de novo. See Arvinger, 862 F.2d at 77. Speech involves a matter of public concern if it affects the social, political, or general well-being of a community. See Connick, 461 U.S. at 146. "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment...." Stroman, 981 F.2d at 156. We have explained that the answer to the public concern inquiry rests on "whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee." Berger v. Battaglia, 779 F.2d 992, 999 (4th Cir.1985)(internal quotation marks omitted). In performing the public concern inquiry, we must examine the content, context, and form of the employees's speech in light of the entire record. See Connick, 461 U.S. at 147-48.
 
 
 45
 We conclude the speech at issue is a matter of public concern. After examining the content, context, and form of Sergeant Edwards' speech as alleged in his second amended complaint, we have no doubt that the proper use and manner of carrying a concealed handgun in North Carolina is a subject in which "the public or the community is likely to be truly concerned" and "interested." Berger, 779 F.2d at 999(internal quotation marks omitted). The content is of obvious concern to citizens on both sides of the often hotly debated issues surrounding the right of ordinary citizens to carry a concealed handgun. Furthermore, the context of Sergeant Edwards' speech, an instructional setting for members of the public, obviously weighs heavily in favor of concluding his speech is a matter of public concern. The same is true for the form of his speech, presumably verbal as well as some written instructions accompanied by physical demonstrations. Having concluded the speech at issue was entitled to protection against the challenged actions of the Defendants, we now turn to consider whether those actions could be justified under the Pickering balancing test.
 
 
 46
 We now, therefore, ask whether, after accepting all of Sergeant Edwards' well-pleaded allegations in his second amended complaints as true and drawing all reasonable factual inferences from those facts in his favor, Sergeant Edwards' interest in speaking upon the proper use and manner of carrying a concealed handgun in North Carolina outweighed the City's interest in providing effective and efficient services to the public. See Stroman, 981 F.2d at 156. In performing this balancing test, this court has recognized that we should first assess the value, from the First Amendment perspective, of the employee's speech. See Berger, 779 F.2d at 999 (holding that in performing the Pickering balancing test, the district court was proper in first assessing the value, from the First Amendment perspective, of the employee's speech). We should then assess the time, place, and manner of the speech at issue, as well as the context in which the dispute arose. See Rankin, 483 U.S. at 388.
 
 
 47
 Here, the speech at issue is on a categorically public issue, the proper method of safely carrying a concealed handgun, knowledge of which is a prerequisite to obtaining a state permit to carry a concealed handgun. Because the speech at issue is on a categorically public issue, it occupies the highest rung of the hierarchy of First Amendment values. See Connick, 461 U.S. at 145 (stating that the Supreme "Court has frequently reaffirmed that speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection.") (quoting NAACP v. Claiborne Hardware Co., 458 U.S. 886, 913, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), and Carey v. Brown, 447 U.S. 455, 467, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980)).
 
 
 48
 We next assess the time, place, and manner of the speech at issue,as well as the context in which the dispute arose. See Rankin, 483 U.S. at 388. In this regard, relevant considerations are "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." Id.
 
 
 49
 Here, the speech was and would always be made while Sergeant Edwards was off-duty, at a location unrelated to the City, and in an instructional manner. There are no facts indicating that Sergeant Edwards did or would offer any comment on the Department's policies or operations, make any reference to any other member of the Department, or claim to be speaking for or in any way on behalf of the Department. There is also no indication at this early pleading stage that Sergeant Edwards' teaching of the concealed handgun safety course would impair the discipline by superiors or harmony among co-workers, would have a detrimental impact on any close working relationships for which personal loyalty and confidence are necessary, or would impede the performance of Sergeant Edwards' duties or interfere with the regular operation of the Department. Indeed, at this early pleading stage, we cannot discern any legitimate interest of the Defendants in preventing a police officer of the City from conducting a concealed handgun safety course for the public that is a creature of state law. Furthermore, because we are at the Rule 12(c) stage of this litigation, we must accept as true Sergeant Edwards' allegation that he was denied permission to teach the hand-gun safety course "because of [Chief] Hill's personal and political zeal to oppose the lawful possession of firearms and because of [Chief] Hill's desire to promote his own personal political agenda,"(J.A. 102), rather than any legitimate concern for the operational efficiency of the Department. For these reasons, we hold that at this early pleading stage, the Pickering balancing test weighs in favor of Sergeant Edwards.
 
 
 50
 The second amended complaint leaves no doubt that the Defendants' threat to terminate Sergeant Edwards, if he resumed conducting the concealed handgun safety course, was intended to chill his right to engage in what we have just determined, at least at this early pleading stage, is protected expression. Accordingly, the threat is actionable. See Rankin, 483 U.S. at 384; Connick, 461 U.S. at 144-45. With respect to the discipline portion of Sergeant Edwards' First Amendment claim, we hold that, after accepting all of Sergeant Edwards' well-pleaded allegations in his second amended complaint as true and drawing all reasonable factual inferences from those facts in his favor, the content of Sergeant Edwards' speech in teaching the concealed handgun safety course was a substantial factor in the City's decision to suspend him for two weeks without pay and place him on one year of probation.[11]
 
 
 51
 Our decision to let Sergeant Edwards' § 1983 claim alleging a violation of his First Amendment right to free speech go forward past the initial pleading stage is fully supported by our Pickering analysis in Berger. In that case, we held on appeal from a bench trial that the Baltimore Police Department could not condition the continued employment of one of its officers upon his cessation of off-duty public entertainment performances in blackface that members of Baltimore's black community found offensive. See Berger, 779 F.2d at 1002. In reaching this holding, we concluded that the police officer's artistic expression constituted a matter of public concern. See id. at 999-1000. On the balancing portion of the Pickering test, we held that the police department's perceived threat of disruption to its external operations and relationships by threatened reaction to the artistic expression by offended members of the public could not serve as justification for disciplinary action directed at that artistic expression. See id. at 1001. The present case is analogous to Berger in two critical respects. First, in both cases the speech and/or expressive conduct was performed off-duty by a police officer at a location unconnected to the police department. Second, in neither case was there any indicia of disruption or likely disruption of the internal operations of the police department.
 
 
 52
 In sum, we hold the district court erred in dismissing Sergeant Edwards' § 1983 claim alleging a violation of his First Amendment right to free speech.
 
 VII.
 
 53
 Sergeant Edwards next claims the district court erred in dismissing his freedom of association claim. We agree.
 
 
 54
 Sergeant Edwards' freedom of association claim parallels his free speech claim. Indeed, we have recognized "[t]he right to associate in order to express one's views is 'inseparable' from the right to speak freely" Cromer v. Brown, 88 F.3d 1315, 1331 (4th Cir.1996) (quoting Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945)). As the Supreme Court explained in Roberts v. United States Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462(1984):
 
 
 55
 An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed.... Consequently, we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.
 
 
 56
 Id. at 622; see also NAACP v. Alabama, ex rel. Patterson, 357 U.S. 449, 460-61, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).
 
 
 57
 However, as in the public employee freedom of speech context, a public employee's corresponding right to freedom of association is not absolute. Logically, the limitations on a public employee's right to associate are "closely analogous" to the limitations on his right to speak. Wilton v. Mayor & City Council, 772 F.2d 88, 91 (4th Cir.1985).
 
 
 58
 In his second amended complaint, Sergeant Edwards alleges that in addition to teaching the statutorily required information during his concealed handgun safety course, he intended to express his personal views on and advocacy of firearms safety. He also alleges that the Defendants infringed on his associational rights "because of [Chief]Hill's personal and political zeal to oppose the lawful possession of firearms and because of [Chief] Hill's desire to promote his own personal political agenda." (J.A. 102). Obviously, as in the free speech context, these are not governmental interests at all, let alone governmental interests that are sufficient to outweigh Sergeant Edwards' interest in associating for the purpose of personal expression on a matter of public concern. Accordingly, we hold Sergeant Edwards states a freedom of association claim.
 
 VIII.
 
 59
 Sergeant Edwards next contends the district court erred in dismissing his equal protection claim. We disagree.
 
 
 60
 The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any persons within its jurisdiction the equal protection of the laws." U.S. Const.Amend. XIV. In part, Sergeant Edwards' equal protection claim is best characterized as a mere rewording of his First Amendment retaliation claim, which we have already held survives the Defendants' motion to dismiss. "A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause." Watkins v. Bowden, 105 F.3d 1344,1354 (11th Cir.1997).
 
 
 61
 In addition to a retaliation theory of liability under the Equal Protection Clause, Sergeant Edwards urges this court to recognize a novel theory in our circuit of liability under the Equal Protection Clause. Relying primarily on the Seventh Circuit's decision in Esmail v. Macrane, 53 F.3d 176 (7th Cir.1995), Sergeant Edwards urges us to recognize that the Equal Protection Clause is violated when a government and/or government official selectively enforces a policy or regulation against an individual, who is not a member of an identifiable group, merely because the government and/or government official harbors animosity towards the individual. See id. at 179-180(holding that "[i]f the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him, the individual ought to have a remedy in federal court" under the Equal Protection Clause even though the individual is not a member of an identifiable group). The present case does not require us to resolve whether such a theory of liability under the Equal Protection Clause is viable in our circuit, because Sergeant Edwards has not alleged that the Defendants disciplined him because they harbored animosity toward him personally. Rather, all allegations in the complaint point to the conclusion that the discipline was in retaliation for Sergeant Edwards' exercise of his rights to free speech and freedom of association under the First Amendment. In sum, the district court did not err in dismissing Sergeant Edwards' equal protection claim.
 
 IX.
 
 62
 Chief Hill and City Manager Slozak alternatively seek to have us affirm the district court's dismissal of Sergeant Edwards' § 1983 claims against them in their individual capacities on the basis that they are entitled to qualified immunity. Although Chief Hill and City Manager Slozak each raised qualified immunity as a basis for dismissal below, the district court did not address qualified immunity in light of its dismissal of Sergeant Edwards' § 1983 claims on the merits. Because the only two claims that we have held should go forward are Sergeant Edwards' free speech and freedom of association claims under the First Amendment, those are the only two claims which necessitate qualified immunity analysis. On those two claims, we hold that Chief Hill and City Manager Slozak are not entitled to qualified immunity at this time.
 
 
 63
 Qualified immunity protects government officials from civil damages in a § 1983 action "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); see Pinder v. Johnson, 54 F.3d 1169, 1173 (4th Cir. 1995) (en banc ). In analyzing the applicability of a qualified immunity defense, we must first identify the specific right that the plaintiff asserts was infringed by the challenged conduct at a high level of particularity. See Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987);Taylor v. Waters, 81 F.3d 429, 433 (4th Cir.1996). We must then consider whether at the time of the claimed violation that right was clearly established. See id. For a right to have been clearly established, "the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." Swanson v. Powers, 937 F.2d 965, 969 (4th Cir.1991) (quoting Anderson, 483 U.S. at 640). In determining whether a right was clearly established at the time of the claimed violation, "courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose...." Jean v. Collins, 155 F.3d 701, 709 (4th Cir.1998) (en banc ). "[I]f a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense." Id. Notably, however, the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent the denial of qualified immunity. See id. at 708. In analyzing the applicability of the qualified immunity defense, we lastly consider whether a reasonable person in the official's position would have known that his conduct would violate that right. See Anderson, 483 U.S. at 639;Taylor, 81 F.3d at 433.
 
 
 64
 Stated at the appropriate level of particularity, the first right allegedly violated by Chief Hill and City Manager Slozak is the right of a police officer to express his personal views on a matter of public concern in an off-duty employment setting without incurring discipline from his employer or being threatened with termination motivated solely by the police chief's personal and political zeal to oppose the lawful possession of firearms and because of the police chief's desire to promote his own personal political agenda. We need not look further than our December 20, 1985 decision in Berger v. Battaglia, 779 F.2d 992, 999 (4th Cir.1985), in order to determine whether the right at issue was clearly established. As previously stated, in Berger, we held the First Amendment prevented the Baltimore Police Department from conditioning the continued employment of one of its officers upon his cessation of off-duty public entertainment performances based upon the police department's perceived threat of disruption to its external operations and relationships by threatened reaction to the officer's artistic expression by offended members of the public. See id. at 1001. Given that on December 20, 1985, it was clearly established that a police department's perceived threat of disruption is insufficient to justify conditioning a police officer's continued employment upon the cessation of his off-duty protected expression, we have no trouble concluding that in November 1995 it was clearly established that a police chief's personal distaste of the content of a police officer's off-duty instruction regarding concealed handgun safety is insufficient to justify conditioning a police officer's continued employment upon the cessation of his protected off-duty expression. We also have no trouble in concluding that a reasonable person in either Chief Hill or City Manager Slozak's position would have known that his conduct would violate that right. Accordingly, qualified immunity on Sergeant Edwards' § 1983 free speech claim under the First Amendment is inappropriate at this early pleading stage of the litigation.
 
 
 65
 We now turn to Sergeant Edwards' freedom of association claim. Stated at the appropriate level of inquiry, the right alleged is the right of a police officer to associate with other persons while off-duty in order to express his views on a matter of public concern without incurring discipline from his employer or being threatened with termination motivated solely by the police chief's personal and political zeal to oppose the lawful possession of firearms and because of the police chief's desire to promote his own personal political agenda. We concluded, supra, that this right in the free speech context was clearly established in November 1995. We also know from the Supreme Court's decision in Roberts v. United States Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), that in November 1995 it was clearly established that implicit in the right to engage in activities protected by the First Amendment is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Id. at 622. Accordingly, logic dictates that the right of a police officer to associate with other persons while off-duty in order to express his personal views on a matter of public concern without incurring discipline from his employer or being threatened with termination motivated solely by the police chief's personal and political zeal to oppose the lawful possession of firearms and because of the police chief's desire to promote his own personal political agenda was clearly established in November 1995. Again, we have no trouble in concluding that a reasonable person in either Chief Hill or City Manager Slozak's position would have known that his conduct would violate that right. Therefore, qualified immunity on Sergeant Edwards' § 1983 freedom of association claim under the First Amendment is also in appropriate at this early pleading stage of the litigation.
 
 X.
 
 66
 Sergeant Edwards' challenge to the district court's dismissal of his § 1983 claims alleging a violation of his Second Amendment right to bear arms, his right to privacy, and his right to procedural due process in connection with his continued employment at the Department war-rant only brief discussion.
 
 A.
 
 67
 The Second Amendment provides that "[a] well regulated Militia,being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend.II. The district court properly dismissed Sergeant Edwards' claim that the Defendants violated the Second Amendment by denying him per-mission to teach the concealed handgun safety course while he was off-duty and by punishing him for doing so without permission, because the law is settled in our circuit that the Second Amendment does not apply to the States. See Love v. Pepersack, Sr., 47 F.3d 120, 123 (4th Cir.1995) (holding that Second Amendment does not apply to the States, and therefore affirming dismissal of plaintiff's claim against State of Maryland and several Maryland state police officers, alleging that such parties violated her Second Amendment right to "keep and bear" a handgun by denying her a permit to carry a handgun).
 
 B.
 
 68
 Sergeant Edwards' contention that the district court erroneously dismissed his § 1983 claim alleging a violation of his right to privacy is without merit, because there is no general constitutional right to privacy; rather, the "right to privacy" has been limited to matters of reproduction, contraception, abortion, and marriage, and none of these matters is implicated in the present case. See Condon v. Reno, 155 F.3d 453, 464 (4th Cir.1998).
 
 C.
 
 69
 Sergeant Edwards' challenge to the district court's dismissal of his § 1983 procedural due process claim alleging a violation of his right to due process in connection with his continued employment at the Department is likewise without merit. In that claim, Sergeant Edwards alleges the Defendants violated his Fourteenth Amendment right to procedural due process in connection with his continued employment at the Department by suspending him without pay for two weeks without first affording him an opportunity to be heard. Unfortunately for Sergeant Edwards, his second amended complaint alleges no facts that, even when liberally construed, would allow a reasonable inference that Sergeant Edwards has a property interest in continued employment by the City, an essential element of his procedural due process claim. See Pittman v. Wilson County, 839 F.2d 225, 226-27 (4th Cir.1988). Accordingly, we affirm the district court's dismissal of this claim.[12]
 
 XI.
 
 70
 In conclusion, we hold: (1) the district court abused its discretion in denying both of Sergeant Edwards' motions to amend his complaint; (2) the district court correctly dismissed all of Sergeant Edwards' § 1983 claims against the Defendants, except his § 1983 claims alleging a violation of his First Amendment rights to free speech and freedom of association; (3) the district court erred as a matter of law in dismissing Sergeant Edwards' § 1983 claims alleging a violation of his First Amendment rights to free speech and freedom of association; and (4) Chief Hill and City Manager Slozak are not entitled to qualified immunity at this early pleading stage. Accordingly, we: (1) reverse the district court's denial of Sergeant Edwards' two motions to amend his complaint; (2) vacate the district court's dismissal of Sergeant Edwards' § 1983 claims alleging violation of his rights to free speech and freedom of association; (3) vacate the accompanying judgment in favor of the Defendants to the extent it grants judgment in favor of the Defendants on these same two claims;(4) affirm the district court's dismissal of his remaining claims and the accompanying judgment with respect to those claims; and (5)remand for further proceedings consistent with this opinion.
 
 
 71
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED
 
 
 
 [1]
 In presenting the facts, we accept all well-pleaded allegations in Sergeant Edwards' complaint as true and draw all reasonable factual inferences from those facts in his favor. See infra Part IV
 
 
 [2]
 Hereinafter, we will refer to this course as the concealed handgun safety course
 
 
 [3]
 The City delegated authority to Chief Hill and City Manager Slozak to formulate, develop and administer final official employment and personnel policies and practices of the City
 
 
 [4]
 Chief Hill believed the North Carolina Concealed Handgun Statute was a " 'bad law.' " (J.A. 108). Indeed, Chief Hill had personally lobbied against the statute prior to its enactment
 
 
 [5]
 With respect to these § 1983 claims, Sergeant Edwards sued Chief Hill and City Manager Slozak in their individual as well as their official capacities
 
 
 [6]
 Federal Rule of Appellate Procedure 28(a)(9)(A) requires that the argument section of an appellant's opening brief must contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies...." Id. Failure to comply with the specific dictates of this rule with respect to a particular claim triggers abandonment of that claim on appeal. See 11126 Baltimore Boulevard, Inc. v. Prince George's County, 58 F.3d 988, 993 n. 7(4th Cir.1995) (en banc ) (involving predecessor to Federal Rule of Appellate Procedure 28(a)(9)(A))
 Here, Sergeant Edwards has failed to comply with the dictates of Federal Rule of Appellate Procedure 28(a)(9)(A) with respect to all of his North Carolina claims except for his claim premised upon the North Carolina Constitution that the Defendants deprived him of his occupational liberty interest. Accordingly, we consider him to have abandoned all of his North Carolina claims except this latter claim. See Rosenberger v. Rector and Visitors, 18 F.3d 269, 276-77 (4th Cir.1994), rev'd on other grounds, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995).
 
 
 [7]
 Given our reversal of the district court's denial of Sergeant Edwards' motions to amend his complaint, from now on we will consider Sergeant Edwards' second amended complaint as the complaint dismissed by the district court
 
 
 [8]
 Sergeant Edwards' claims against Chief Hill and City Manager Slozak must be treated as claims against the City. See Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent ....") (internal quotation marks omitted). Thus, for purposes of this issue, we only refer to the City as the defendant
 
 
 [9]
 Pembaur concerned a decision by a county prosecutor, acting as the county's final decision maker to direct county deputies to forcibly enter the petitioner's place of business to serve capiases upon third parties. See 475 U.S. at 485. The Supreme Court held that the county could be liable under § 1983, holding that a final decision maker's adoption of a course of action "tailored to a particular situation and not intended to control decisions in later situations" may, in some circumstances, give rise to municipal liability under § 1983. Pembaur, 475 U.S. at 481; see also Board of County Com'rs v. Brown, 520 U.S. 397, 405-06, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)(affirming this reading of Pembaur ). Elaborating, the Court stated:
 If the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.
 Pembaur, 475 U.S. at 481 (footnote omitted).
 
 
 [10]
 This prohibition is made applicable to the States and local levels of government by the Fourteenth Amendment. See Phillips v. Borough of Keyport, 107 F.3d 164, 172 (3d Cir.1997) (en banc )
 
 
 [11]
 We note that Sergeant Edwards alleges a separate claim that the Defendants violated his Fourteenth Amendment right to substantive due process. Sergeant Edwards' substantive due process claim fully overlaps his free speech claim. Because the First Amendment "provides an explicit textual source of constitutional protection against" the particular sort of government behavior of which he complains in his substantive due process claim, the First Amendment, "not the more generalized notion of substantive due process, must be the guide for analyzing" his claim. County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1714, 140 L.Ed.2d 1043 (1998)(internal quotation marks omitted). Accordingly, we affirm the district court's dismissal of Sergeant Edwards' separate substantive due process claim
 We also note that Sergeant Edwards alleges a separate § 1983 claim that the Defendants violated his alleged First Amendment right to academic freedom. Although the Supreme Court declared over thirty years ago that academic freedom is a "special concern of the First Amendment," Keyishian v. Board of Regents, 385 U.S. 589, 603, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), the caselaw to follow on the subject has left us in murky waters. Nevertheless, under the facts as alleged in Sergeant Edwards' second amended complaint, his academic freedom claim fully overlaps his free speech claim. As with Sergeant Edwards' substantive due process claim, we look to the textual source of the claim, here the First Amendment, and not to the more generalized notion of academic freedom, to analyze this claim. Accordingly, we affirm the district court's dismissal of Sergeant Edwards' separate academic freedom claim.
 
 
 [12]
 Sergeant Edwards raises two other claims grounded in procedural due process. First, he argues that the district court erroneously dismissed his § 1983 claim alleging a deprivation of his liberty interest in pursuing secondary employment of his own choosing without being afforded procedural due process. Second, Sergeant Edwards argues that the district court erred when it dismissed a similar claim made pursuant to the North Carolina Constitution. We have reviewed these claims and find them to be without merit