UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BENJAMIN A. RATNER, a minor, by
and through his mother and next
friend, Beth Haney; BETH HANEY,
individually,

          *Plaintiffs-Appellants,*

          v.

LOUDOUN COUNTY PUBLIC SCHOOLS;
EDGAR B. HATRICK, individually and
in his official capacity as Division
Superintendent, Loudoun County
Public Schools; HARRY E. BIBB,
individually and in his official
capacity as Superintendent's
Designee, Loudoun County Public
Schools; JOSEPH L. MAUCK,
individually and in his official
capacity as Principal, Blue Ridge
Middle School; ROBERTA GRIFFITH,
individually and in her official
capacity as Assistant Principal, Blue
Ridge Middle School,

          *Defendants-Appellees.*

No. 00-2157

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-00-944-A)

Argued: May 8, 2001

Decided: July 30, 2001

Before WIDENER and MOTZ, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion. Judge Hamilton wrote a concurring opinion.

## COUNSEL

**ARGUED:** Steven Henry Aden, THE RUTHERFORD INSTITUTE, Charlottesville, Virginia, for Appellants. John Otto Easton, JORDAN, COYNE & SAVITS, L.L.P., Fairfax, Virginia, for Appellees. **ON BRIEF:** Carol T. Stone, Anna M. Stafford, JORDAN, COYNE & SAVITS, L.L.P., Fairfax, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

In October 1999, Benjamin Ratner, age 13, was in the eighth grade at Blue Ridge Middle School in Loudoun County, Virginia.[1] On October 8, 1999, a schoolmate told Ratner that she had been suicidal the previous evening and had contemplated killing herself by slitting her wrists. She also told Ratner that she inadvertently had brought a knife to school in her binder that morning. Ratner had known her for two years, was aware of her previous suicide attempts, and feared for her safety. Thus, he took the binder from her and put it in his locker. He did not tell school authorities about the knife, but he intended to tell both his and her parents after school.

By lunchtime that day, Roberta Griffith, Assistant Principal at the school, had learned that the girl might have given a knife to Ratner.

[1]Our recitation of the facts of this case are those found in Ratner's complaint, which we accept as true for the purposes of this appeal. *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999).

Eventually, Fanny Kellogg, Dean at the school, summoned Ratner to her office and asked him about the knife. Ratner admitted that he had it, and at Kellogg's direction he went alone to his locker, retrieved the binder, and gave it to Kellogg. Kellogg acknowledged that she believed Ratner acted in what he saw as the girl's best interest and that at no time did Ratner pose a threat to harm anyone with the knife.

Nonetheless, Ratner was then suspended by Griffith for 10 days for possessing a knife on school grounds in violation of school board policy. Four days later, the school's principal, Joseph Mauck, affirmed Ratner's suspension with written notice. Two days after that, Edgar Hatrick, Division Superintendent for the Loudoun County Public Schools, issued written notice informing Ratner that he was being suspended indefinitely pending further action by the school board, and informing Ratner that Hatrick was recommending to an administrative hearing panel that Ratner be suspended for the remainder of the school term, which ended February 1, 2000. The administrative hearing panel met on October 29, 1999, and recommended Ratner be suspended for the remainder of the term, and Hatrick then gave Ratner written notice of his long-term suspension. Ratner's mother, Beth Haney, requested and received a hearing before the school district's Discipline Committee to appeal, but that committee unanimously approved Ratner's long-term suspension.

Ratner, through his mother, filed suit against the school district and four of its employees under 42 U.S.C. § 1983. Ratner's complaint asserted that his suspension under what is called a zero tolerance policy[2]

---

[2]Ratner's complaint asserts that the school employs a zero tolerance policy regarding weapons, a policy that precludes officials from considering the circumstances of a particular case when meting out punishment. Although we accept Ratner's assertion as true for the purposes of this appeal, we note that his brief's recitation of the school's policies indicates that possession of a weapon on school grounds would not necessarily result in long-term suspension. Instead, as recited by Ratner, board policy in such cases apparently begins with a presumption that offending students will be expelled (permanently removed) but allows school officials discretion to subject offending students "to such lesser disciplinary action, including long-term suspension [suspension for one or two semesters], as may be deemed appropriate."

amounted to violations of Ratner's Fourteenth Amendment rights to due process and equal protection and his Eighth Amendment right to be free from cruel and unusual punishment, and asserted several other causes of action, and sought compensatory and punitive damages, fees and costs, and other relief.

The district court dismissed Ratner's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). We review *de novo* a district court's decision to dismiss a case for failure to state a claim. *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999). In reviewing a 12(b)(6) dismissal, we construe factual allegations in the nonmoving party's favor, treating them as true, and we will affirm a dismissal for failure to state a claim only if it appears that the plaintiffs would not be entitled to relief under any facts which could be proved in support of their claims. *Mayes*, 198 F.3d at 460 (quotations and citations omitted). Having heard oral argument and considering the briefs and the record, we find no reversible error, and we affirm substantially for the same reasons expressed by the district court in its opinion, *Ratner v. Loudoun County Pub. Sch.*, Civ. No. 00-944-A (E.D. Va. July 28, 2000).

In its memorandum opinion, the district court concluded Ratner's claim was, in essence, a claim of due process violations. The district court also concluded, correctly, that the school officials gave Ratner constitutionally sufficient, even if imperfect, process in the various notices and hearings it accorded him, and we agree. See *Goss v. Lopez*, 419 U.S. 565, 581 (1975) (describing process due students in connection with suspensions from school).

However harsh the result in this case, the federal courts are not properly called upon to judge the wisdom of a zero tolerance policy of the sort alleged to be in place at Blue Ridge Middle School or of its application to Ratner. Instead, our inquiry here is limited to whether Ratner's complaint alleges sufficient facts which if proved would show that the implementation of the school's policy in this case failed to comport with the United States Constitution. We conclude that the facts alleged in this case do not so demonstrate.

The judgment of the district court is accordingly

*AFFIRMED*.

HAMILTON, Senior Circuit Judge, concurring:

On appeal, Ratner challenges the district court's dismissal of three federal constitutional claims alleged in his complaint: (1) a procedural due process claim under the Fourteenth Amendment; (2) an equal protection claim under the Fourteenth Amendment; and (3) a cruel and unusual punishment claim under the Eighth Amendment. U.S. Const. amend. VIII, XIV, § 1. After accepting all well-pleaded allegations in Ratner's complaint as true and drawing all reasonable factual inferences from those facts in his favor, it appears certain that he cannot prove any set of facts which would entitle him to relief on any of the three claims asserted. Accordingly, the opinion for the court correctly affirms the district court's Rule 12(b)(6) dismissal of Ratner's claims, and I am constrained to concur in that opinion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) ("[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.").

I write separately to express my compassion for Ratner, his family, and common sense. Each is the victim of good intentions run amuck. Ratner's complaint alleges that school suspensions for possession of a weapon on Loudoun County school property are imposed automatically, pursuant to a zero-tolerance policy that precludes consideration of the facts and circumstances of a particular student's conduct in determining a violation of stated policy and the resulting student punishment. There is no doubt that this zero-tolerance/automatic suspension policy, and others like it adopted by school officials throughout our nation, were adopted in large response to the tragic school shootings that have plagued our nation's schools over the past several years. Also, no doubt exists that in adopting these zero-tolerance/automatic suspension policies, school officials had the noble intention of protecting the health and safety of our nation's school children and those adults charged with the profound responsibility of educating them. However, as the oft repeated old English maxim recognizes, "the road to hell is paved with good intentions." The panic over school violence and the intent to stop it has caused school officials to jettison the common sense idea that a person's punishment

should fit his crime in favor of a single harsh punishment, namely, mandatory school suspension. Such a policy has stripped away judgment and discretion on the part of those administering it; refuting the well established precept that judgment is the better part of wisdom.

Here, a young man, Ratner, took a binder containing a knife from a suicidal fellow student in an effort to save her life. He put the binder in his locker without even opening it. Indeed, at all times, Ratner never saw the knife. Further, the facts do not offer even the hint of a suggestion that Ratner ever intended to personally possess the knife or harm anyone with it. In fact, the first school official on the scene reported that at no time did Ratner intend to harm anyone with the knife. Yet, based on the school's zero-tolerance/automatic suspension policy, Ratner was suspended from school for nearly four months.

School officials should, without doubt, punish a student for knowingly and intentionally bringing a dangerous weapon on school property. But the question raised by the facts of Ratner's case is one of degree and the law must be flexible enough so that school officials may intrude upon the right to a free appropriate public education *only* in the most justifiable circumstances. *See Goss v. Lopez*, 419 U.S. 565, 573-74 (1975) (holding that property interest in public education is created when state maintains a public school system and requires children to attend). Under a facts/circumstances-sensitive examination of this case, Ratner's nearly four-month suspension from middle school is not justifiable. Indeed, it is a calculated overkill when the punishment is considered in light of Ratner's good-faith intentions and his, at best, if at all, technical violation of the school's policy. Suffice it to say that the degree of Ratner's violation of school policy does not correlate with the degree of his punishment. Certainly, the oft repeated maxim, "there is no justice without mercy" has been defiled by the results obtained here. But alas, as the opinion for the court explains, this is not a federal constitutional problem.