**Karl MANSOOR, Plaintiff,**

v.

**COUNTY OF ALBEMARLE,
et al., Defendants.**

**No. CIV. A. 3:00CV00047.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Dec. 20, 2000.

**371**

Deborah Chasen Wyatt, Wyatt & Associates, Charlottesville, VA, for plaintiff.

Mark Dudley Obenshain, Wharton, Aldhizer & Weaver, PLC, Harrisonburg, VA, for County of Alberle, Robert Tucker, Larry Davis, Mark Trank, John Miller, Richard Douglas Rhoades, defendants.

William N. Watkins, Sands, Anderson, Marks & Miller, Richmond, VA, for Cynthia Favret, defendant.

John Joshua Wheeler, Charlottesville, VA, for Thomas Jefferson Center for the Protection of Free Expression.

1. The court accepts as true all of the well-pleaded allegations in the plaintiff's Motion for Judgment (hereinafter, "complaint"). *See* Part II *infra*; *Edwards v. City of Goldsboro*, 178 F.3d 231, 237 n. 1 (4th Cir.1999). The court may and shall consider attachments to the complaint as part of the complaint, without converting the motions to dismiss into motions for summary judgment pursuant to Rule 12(b). *See Anheuser–Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir.1995) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

The plaintiff, an officer in the Albemarle County Police Department ("Department"), filed this action pursuant to 42 U.S.C. § 1983 against the County of Albemarle ("County"), certain county employees, and a private psychologist. He claims that the defendants violated his First Amendment right to freedom of speech by suspending him with pay after he spoke at a County Board of Supervisors meeting, and by conditioning his further employment on his not making any critical statements about any county employee at any time to any third party. He further claims that the lack of process surrounding his suspension with pay violated his right to due process of law under the Fourteenth Amendment, and that the defendants violated related laws of the Commonwealth of Virginia. The defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the defendants' motions to dismiss shall be granted in part and denied in part.

I.

The plaintiff works as a police officer for the Albemarle County Police Department ("Department").[1] In April 1997, he attended a county Board of Supervisors Budget Hearing. At the hearing, the plaintiff made a statement that was critical of a "pay plan" proposed by the County Executive, defendant Robert Tucker. On April 11, 1997, Tucker responded by sending a letter to the plaintiff, with copies to

(1990)), *cert. granted and judgment vacated on other grounds*, 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir.1991). To the extent the parties refer to other exhibits, the court refuses to consider them, and thus excludes them for the purpose of deciding these motions to dismiss. *See Finley Lines Joint Protective Bd. Unit 200, Brotherhood Ry. Carmen v. Norfolk Southern Corp.*, 109 F.3d 993, 996 (4th Cir.1997) (discussing district court's discretion to exclude extraneous materials).

each of his police supervisors, challenging the plaintiff's statement. Tucker's deputy also sent a letter to the plaintiff, telling him he had "no business" speaking critically about the County Executive or about other county matters pertaining to the Department.

Through that year, the plaintiff continued to express concerns to his Chief of Police, defendant Robert Miller, about how certain matters were being handled within the Department. Miller did not respond. By early 1998, these concerns apparently caused the plaintiff enough stress that he began seeing a private counselor, Dr. Hocking. Dr. Hocking diagnosed the plaintiff with panic disorder, and the plaintiff decided to take approximately forty days' sick leave. Upon his return to work, he asked Miller and defendant Richard Douglas Rhoads, the Captain of the Department, if he could be reimbursed for his counseling costs and missed days. The defendants saw this request as their opportunity to prevent the plaintiff from further criticizing the Department and county officials and policies.

On the advice of defendants Larry Davis and Mark Trank, counsel for the County, Miller and Rhoads informed the plaintiff that before he could be reimbursed he had to obtain a "second opinion" on his psychological condition. They referred him to a County-hired psychologist, defendant Cynthia Favret, Ph.D. In reality, Miller and Rhoads did not need Dr. Favret's opinion to reimburse the plaintiff. Rather, they wanted her to make an unfavorable report, which they then could use as a basis for retaliating against him for his prior statements, and for preventing him from making such statements in the future.

On October 20, 1998, Miller informed the plaintiff that Dr. Favret reported he had "impaired judgment and related behaviors." Although Dr. Favret's evaluation was disseminated to defendants Miller, Rhoads, Davis, Trank, and Tucker (collectively, the "individual county defendants"), the plaintiff was denied access to

it and never was informed of the nature of his "impaired judgment and related behaviors." Based on Dr. Favret's evaluation, Miller suspended the plaintiff for thirty days, with pay. Miller claimed the suspension was "non-disciplinary," and thus, non-grievable. This was the first time the plaintiff had been disciplined in nine years of service. He previously received high evaluations for his performance in the field. Although the suspension was with pay, the plaintiff was unable to earn overtime during the holiday season and was denied the use of a take-home vehicle (both acknowledged as benefits of county employment), and his personnel record reflects a suspension for "impaired judgment."

The thirty-day duration of the suspension was conditioned on the plaintiff undergoing further counseling with Dr. Favret. This condition was designed by the defendants to obtain a second evaluation that would be more critical than the first. The plaintiff complied, and underwent further counseling. He was not permitted to return to work after thirty days, presumably because Dr. Favret's second opinion reported that he was "highly conventional, conforming, religious, and naive."

The suspension lasted seventy days, until December 30, 1998. On that date, Miller sent the plaintiff a "Plan of Assistance," which stated that the plaintiff only could return to work on certain terms and conditions. The first condition was:

 That you shall at all times refrain from any verbal or written communications to third parties, including but not limited to county employees, relating to your employment that are in any way critical or negative towards the county executive, the chief of police or other police department management or command staff, or any other county official or employee.

(Memorandum from Miller to Mansoor (Dec. 30, 1998) (attached to the complaint).)

As the plaintiff wished to continue in his employment, he saw no option but to agree to return to work under these conditions. As a consequence, he "ceased speaking up on ongoing problems within the police department," including the following:

a) overt racial and sexual favoritism in the admission process; b) requests to change and falsify reports; c) ongoing and blatant sexual harassment of numerous females by one of the Defendants which is and has been ... well-known to all Defendants, except possibly Dr. Favret, for at least a year; d) official perjury; e) unwarranted citizen privacy invasions by use of police access to information; and f) abuse of police equipment and provisions ... for political purposes.

(Compl. at 8 ¶ 38.)

The plaintiff sued the defendants in the Circuit Court for the City of Charlottesville on April 19, 2000. The case was removed to this court on May 19. The complaint sets forth five causes of action: (1) Count One alleges a federal § 1983 claim against all defendants, based on violations of the First Amendment to the United States Constitution; (2) Count Two alleges a federal § 1983 claim against all defendants, based on deprivations of procedural due process under the Fourteenth Amendment; (3) Count Three alleges that all of the defendants violated the plaintiff's right to privacy under state law; (4) Count Four alleges a state law claim for actual and constructive fraud against all defendants except Dr. Favret; (5) Count Five alleges a state law claim for breach of contract against all defendants except Dr. Favret. The plaintiff seeks compensatory and punitive damages, and a declaration that his constitutional rights were violated. He also requests an injunction requiring that his employment not be subject to the above-described conditions, that his personnel history be expunged of adverse information, and that all information obtained from Dr. Favret be destroyed and not be used in the future.

The county defendants and Dr. Favret filed separate motions to dismiss, both pursuant to Federal Rule of Civil Procedure 12(b)(6). The court referred the motions to the presiding United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The Magistrate Judge found that the plaintiff alleged insufficient facts to sustain his federal claims. He recommended that the court dismiss the case in its entirety and remand the supplemental state law claims to state court. He nevertheless examined the state law claims to provide the court with a complete record, and found that some of the state law claims could survive.

The plaintiff and the county defendants filed timely objections to the Report and Recommendation pursuant to Federal Rule of Civil Procedure 72.[2] Dr. Favret filed no objections. The case is now before the court, which reviews *de novo* those portions of the report or specified proposed findings or recommendations as to which objection was made. *See* 28 U.S.C. § 636(b)(1) (West 1993 & Supp. 2000); Fed.R.Civ.P. 72(b).

## II.

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine "whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient." *Eastern Shore Markets, Inc. v. J.D. Assocs.*, 213 F.3d 175, 180 (4th Cir.2000). The court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations ... [but] need not accept the legal conclusions drawn from the facts .... [or] accept as true unwarranted inferences, unreasonable conclu-

---

**2.** In addition, briefs of *amicus curiae* in support of the plaintiff were filed by J. Joshua Wheeler for The Thomas Jefferson Center for the Protection of Free Expression.

sions, or arguments." *Id.* (citations omitted). When a Rule 12(b)(6) motion tests the sufficiency of a civil rights complaint, the court " 'must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.' " *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999) (quoting *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir.1988) (emphasis in *Edwards* ).) With these principles in mind, the court turns to the Magistrate Judge's recommendation that the court dismiss the plaintiff's complaint. The court shall address each count of the complaint *seriatim.*

### III.

The plaintiff first objects that the Magistrate Judge erred in recommending dismissal of Count One of the complaint, which alleges the defendants violated his free speech rights by: (1) conditioning his continued employment with the Department upon his not criticizing any county employees; and (2) retaliating against him for criticizing the County Executive's "pay plan" at a County Board of Supervisors meeting, by imposing the above conditions, suspending him under the pretext of requiring a further psychological evaluation, and refusing to reimburse him for the costs of counseling and missed days due to his leave of absence. The court finds that the plaintiff sufficiently stated a First Amendment claim under the first theory, but not under the second theory.

■ 42 U.S.C. § 1983 "provides 'a method for vindicating federal rights elsewhere conferred.' " *Kendall v. City of Chesapeake,* 174 F.3d 437, 440 (4th Cir. 1999) (quoting *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). The First Amendment confers the federal right to "the freedom of speech." U.S. Const. amend. I. This right is made applicable to the states through the Fourteenth Amendment, *see Edwards,* 178 F.3d at 245 n. 10, and "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir.2000). "It is well settled that citizens do not relinquish all of their First Amendment rights by virtue of accepting public employment." *Urofsky v. Gilmore,* 216 F.3d 401, 406 (4th Cir.2000) (en banc) (citing *United States v. National Treasury Employees Union,* 513 U.S. 454, 465, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) (hereinafter, *"NTEU "*); *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). In this respect, "a public employer is prohibited from discharging or taking other adverse action against one of its employees on a basis that infringes the employee's constitutionally protected interest in freedom of speech." *Edwards,* 178 F.3d at 245–46. At the same time, the Supreme Court has recognized that public employers, in their capacity as employers, have legitimate interests in regulating the speech of their employees. *See Connick,* 461 U.S. at 142, 103 S.Ct. 1684 (noting that the State has an interest "in promoting the efficiency of the public services it performs through its employees" (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731)).

■ To distinguish between protected and non-protected speech by public employees, the Supreme Court established the *"Pickering* balancing test." The threshold question in this test is whether the employee "spoke '*as a citizen* upon matters of public concern' rather than '*as an employee* upon matters only of personal interest.' " *NTEU,* 513 U.S. at 466, 115 S.Ct. 1003 (quoting *Connick,* 461 U.S. at 147, 103 S.Ct. 1684) (emphasis in *NTEU* ). "If a public employee's speech made in his capacity as a private citizen does not touch upon a matter of public concern, the state, as employer, may regulate it without in-

fringing any First Amendment protection," *Urofsky,* 216 F.3d at 406, and the inquiry ends, *see Edwards,* 178 F.3d at 246. If the speech is made in an employee's capacity as a citizen and involves matters of public concern, then the inquiry proceeds to the second step: balancing the public employee's interests as a member of the general public in speaking freely about matters of public concern, and the interests of the public employer in promoting the efficiency of its public services by regulating its employees' speech. *See NTEU,* 513 U.S. at 465–69, 115 S.Ct. 1003; *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731.[3]

Two types of speech are involved in this case, one that is prohibited *ex ante* by an alleged "prior restraint," and the other for which the plaintiff allegedly was retaliated against, *ex post.* (1) The first type of speech is that which has not yet occurred—but which the Plan of Assistance prohibits—involving "any verbal or written communications to third parties ... relating to [the plaintiff's] employment that are in any way critical or negative towards ... any ... county official or employee." (2) The second type of speech is the statement the plaintiff made at the Board of Supervisors meeting, concerning the County Executive's "pay plan." For each type of speech the court must begin with the threshold inquiry of whether it involves matters of public concern upon which the plaintiff would or did speak in his role as a private citizen. If it does, then the court must proceed to balance the parties' respective interests.

**A.**

■ The parties principally dispute whether the speech prohibited by the Plan of Assistance involves matters of public concern upon which the plaintiff would

speak as a private citizen. Matters of public concern are those that "relat[e] to any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. Whether an employee's speech is a matter of public concern is a question of law, *see id.* at 148 n. 7, 103 S.Ct. 1684, and "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. 1684. Sitting en banc, the Fourth Circuit recently examined this issue in detail. *See Urofsky v. Gilmore,* 216 F.3d 401 (4th Cir.2000) (en banc). The court held that although the content, context, and form of the speech are relevant, "critical to a determination of whether employee speech is entitled to First Amendment protection is whether the speech is made primarily in the [employee's] role as citizen or primarily in his role as employee." *Id.* at 407 (internal quotation marks and citations omitted).

The issue presented in this case is whether speech "relating" to employment necessarily is made in one's "role" as an employee. The Magistrate Judge held that because the Plan of Assistance expressly limits the prohibited speech to speech "relating to your employment," the plaintiff only was prohibited from speaking in his role as an employee. The plaintiff objects that the Magistrate erroneously assumed that all speech "relating" to employment is made in one's "role" as an employee. The court agrees.

■ In certain circumstances, a public employee may speak *as a private citizen* upon matters of public concern that also happen to relate to his employment. *See, e.g., Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 284, 97 S.Ct.

---

**3.** The third and fourth steps to establish an actionable First Amendment claim involve questions of causation and motivation. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Hughes v. Bedsole,* 48 F.3d 1376, 1385 & 1387 n. 11 (4th Cir.1995);

*see also Gardetto v. Mason,* 100 F.3d 803, 811 (10th Cir.1996) (noting that the first two steps are questions of law, and the last two are questions of fact). The sufficiency of the complaint is not contested at these steps, and the court shall not address them here.

568, 50 L.Ed.2d 471 (1977) (accepting district court's finding that teacher's communications to a radio station about his school's dress code were protected by the First and Fourteenth Amendments); *Pickering,* 391 U.S. at 569–75, 88 S.Ct. 1731 (extending First Amendment protection to teacher's criticism of Board of Education and superintendent of schools concerning school budgeting); *Berger v. Battaglia,* 779 F.2d 992, 999 (4th Cir.1985) (noting generally that "employee criticisms of employer policy" may be protected in certain circumstances); *see also Sanjour v. EPA,* 56 F.3d 85, 88, 97 n. 13 (D.C.Cir.1995) (en banc) (striking down as under- and overinclusive regulations that banned federal employees from receiving compensation "for teaching, speaking, or writing *that relates to the employee's official duties*" (emphasis added); rejecting dissent's argument that the "requirement that the regulated speech be connected to the employee's official duties, save the regulations here" (quoting dissent)). The court does not read *Urofsky* as holding the contrary. In that case, the Fourth Circuit posed a hypothetical in which it distinguished two types of speech, one of which was protected speech, one which was not, and both of which "related" to the speaker's employment. The example of protected speech involved an assistant district attorney who wrote a letter to her local newspaper to expose a pattern of prosecutorial malfeasance. The court explained that such speech would be constitutionally protected, because it would be made in her capacity as a citizen, upon matters of public concern. Importantly, this speech would be protected even though it generally "related" to her employment.

Having established that the speech prohibited by the Plan of Assistance is not necessarily "employee speech" simply because it is "employment related," the question remains whether the plaintiff has alleged sufficient facts to establish that the Plan of Assistance precludes him from speaking upon matters of public concern as a private citizen. Like this case, *Urofsky*

concerned the application of the *Pickering* test to an alleged prior restraint. The plaintiffs were university professors who challenged the constitutionality of a Virginia statute that prohibits state employees from using stateowned computers to access sexually explicit material on the Internet. The Fourth Circuit upheld the statute on the dispositive finding that the speech only would be made in the professors' roles as employees, and not in their roles as citizens. A critical fact was that the statute is drawn narrowly, such that the employees "remain free to access sexually explicit materials from their personal or other computers not owned or leased by the state." *Urofsky,* 216 F.3d at 405.

■ In this case, the restraint is much broader than the restraint in *Urofsky,* in that it does not prohibit speech solely made in the plaintiff's role as an employee. The Plan of Assistance is so broad as to preclude the plaintiff at "all times" from making "any verbal or written communications," to any "third parties," about any matter relating to his employment that is "in any way critical or negative" towards "any ... county official or employee." Such a vast prohibition necessarily includes matters· upon which the plaintiff would speak in his capacity as a private citizen, and which also happen to relate to his employment generally. For example, the plaintiff alleges that because of the Plan of Assistance, he "ceased speaking up on ongoing problems within the police department," including race and gender discrimination, known sexual harassment, and various forms of police misconduct, (*see* Compl. at 8 ¶ 38), clearly matters "of political, social, or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. Given the breadth of the restraint, the plaintiff did not and does not remain free to speak *as a private citizen* Rabout any of these matters, or about anything whatsoever that criticizes any county employee, in any form or context, if he wished to return to his job and retain it. To the extent they touch upon his speech as a

private citizen, the conditions imposed on the plaintiff's employment are overinclusive. By pleading that his freedom of speech is restrained by conditions of this breadth, the plaintiff has pled sufficient facts to sustain a claim that he is precluded him from speaking upon matters of public concern as a private citizen.

█ The Magistrate Judge did not reach the question of balancing the respective interests of the plaintiff and the defendants. At this step, the burden shifts to the public employer to justify its actions. *See NTEU*, 513 U.S. at 466, 115 S.Ct. 1003. The plaintiff argues that prior restraints only may be justified under the higher "strict scrutiny" standard of review. The court accepts this argument in part, and rejects it in part. While the defendants do bear a higher burden in the context of a ban that "chills potential speech before it happens," *id.* at 468, 115 S.Ct. 1003, the burden is tempered by the *Pickering* context and by the County's interests as an employer. The defendants' burden is to demonstrate that "the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *Id. See also Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 750 (7th Cir.1999) (*NTEU* test applies to prior restraints in *Pickering* context; citing other circuits holding same).

█ Here, given the breadth of the restraint, the plaintiff was threatened with termination if he spoke as a private citizen upon matters of public concern, no matter what the context, content, or form of his speech, and even if the speech was "performed off-duty ... at a location unconnected to the police department .... [without] disruption of the internal operations of the police department." *Edwards v. City of Goldsboro*, 178 F.3d 231, 249 (4th Cir.1999) (finding that the balancing test tipped in the plaintiff-officer's favor under these circumstances); *Berger v. Battaglia*, 779 F.2d 992, 1001 (4th Cir.1985) (same). As in *Edwards*, there is "no doubt that the Defendants' threat to terminate [the plaintiff] ... was intended to chill his right to engage in what we have just determined, at least at this early pleading stage, is protected expression. Accordingly, the threat is actionable." 178 F.3d at 248. Weighing in the defendants' favor is some evidence indicating the plaintiff was insubordinate, and the fact that only one officer was subject to the restraint. Although evidence of insubordination ultimately might justify the defendants' actions when developed through discovery, the evidence as it now stands is but a slender reed for supporting the broad prior restraint contained in the Plan of Assistance; the evidence does not establish that the prohibited speech has a "necessary impact on the actual operation" of the Department. *NTEU*, 513 U.S. at 468, 115 S.Ct. 1003. It may be that the defendants' efforts to address his insubordination simply went too far. *See, e.g., Berger*, 779 F.2d at 1001 (noting that while "the special dilemma presented for the Police Department here can only excite judicial sympathy .... the Department ... could not respond as it did consistently with the first amendment").

Considering the defendants' higher burden when a case involves a prior restraint, and considering the procedural posture of the case—when all reasonable inferences must be drawn in favor of the plaintiff, and when the defendants have yet to develop evidence in support of their position—the court finds that the plaintiff sufficiently alleged that the extraordinarily broad restrictions imposed as conditions of his employment unduly abridged his right to speak as a private citizen upon matters of public concern, and that the *Pickering* balance weighs in his favor. In this respect, the plaintiff's objections shall be sustained, and the defendants' motions to dismiss denied.

### B.

The plaintiff also objects that the Magistrate Judge failed to consider whether the second type of speech—his speech at the Board of Supervisors meeting—was protected. Regardless, the plaintiff has not stated a First Amendment claim for retaliation. Unlike the protected speech prohibited *ex ante* by the sweeping prior restraint described above, the statement the plaintiff actually made at the Board of Supervisors meeting is not protected by the First Amendment.

A transcript of the plaintiff's statement is attached to the complaint. It indicates that he said he was present at the Board of Supervisors meeting "on behalf of numerous employees of the Albemarle County Police Department." He also said, "What we're asking for is for merit pay for satisfactory or better performance." These statements, and his recurring use of the pronoun "we," unquestionably reveal that the plaintiff was speaking at the meeting in his capacity as an employee, on behalf of his fellow employees, and not in his capacity as a private citizen. The speech therefore is not protected by the First Amendment. *See Urofsky v. Gilmore*, 216 F.3d 401, 406–09 (4th Cir.2000) (en banc). This is so even though the plaintiff further stated that "there is a problem with our pay, and we state that it has an effect on police service." Speech is not protected if the public employee speaks in his role as an employee, even if the speech involves matters of public concern. *See id.* at 407 ("[S]peech by public employees undertaken in the course of their job duties will frequently involve matters of vital concern to the public, without giving those employees a First Amendment right to dictate to the state how they will do their jobs."). The "role of the employee" question is, as Chief Judge Wilkinson described it, "dispositive." *Id.* at 427 (Wilkinson, C.J., concurring in judgment). Count One of the plaintiff's complaint accordingly cannot be sustained on the ground that he was retaliated against for speaking at the Board of Supervisors meeting, as his speech at that meeting was made in his role as an employee, and therefore was not protected by the First Amendment. In this respect, the plaintiff's objections shall be overruled, and the defendants' motions to dismiss granted.

### C.

The plaintiff also objects to the Magistrate Judge's finding that the individual defendants are qualifiedly immune from liability for imposing the Plan of Assistance conditions upon his employment. To determine whether a government official is entitled to qualified immunity, the court must, in sequence, "(1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable offic[ial] would have understood that the conduct at issue violated the clearly established right." *Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir.2000) (quotation marks and citation omitted).

As already discussed, the plaintiff adequately alleged that his right to freedom of speech under the First Amendment was violated by the defendants' conditioning his employment on the terms prescribed by the Plan of Assistance. Taking the well-pled facts of the complaint as true, each individual defendant is implicated in this violation, as follows: Tucker, Davis, and Trank, oversaw, knew about, or advised Miller to impose upon the plaintiff the conditions contained in the Plan of Assistance. Miller personally drafted the Plan of Assistance. Rhoads informed the plaintiff that a second opinion would be needed before he was permitted to be reimbursed, intending that it be used "to obtain ... some method for chilling further statements." (Compl. at 5 ¶ 24.) Dr. Favret was "especially hired" by the County, (Compl. at 5 ¶ 21), to conduct an evaluation "initiated and coordinated ... as a condition of continued employment." (Letter from Favret to Wyatt (Feb. 15,

2000).) She "duly complied" with the County's alleged scheme, (Compl. at 7 ¶ 34), by providing a second evaluation more critical than the first.[4]

It has been well-established since *Pickering* (1968) and *Connick* (1983) that a public employee's employment cannot be conditioned on his not speaking as a private citizen upon matters of public concern. *See Connick*, 461 U.S. at 142, 103 S.Ct. 1684 (observing that a public employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression"); *Pickering*, 391 U.S. at 574, 88 S.Ct. 1731 (noting that "the threat of dismissal from public employment is . . . a potent means of inhibiting speech"). It also has been established since *Pickering* that a public employee is free to speak as a private citizen about matters of public concern that generally "relate" to his or her employment.

The individual defendants were "not operating in a murky area of the law." *Doe v. Broderick*, 225 F.3d 440, 453 (4th Cir. 2000). Each defendant reasonably should have known that imposing such extraordinarily broad conditions upon the plaintiff's employment would preclude him from speaking as a private citizen upon matters of public concern, and thus would violate well-established First Amendment law. Based on the record as it now stands, the court does not find that the individual defendants are entitled to qualified immunity for the First Amendment violations alleged in Count One. The defendants' motions to dismiss Count One of the complaint shall be denied in part and granted in part, as set forth above.

## IV.

The plaintiff next objects that the Magistrate Judge erred in recommending dismissal of Count Two of the complaint, which alleges that the defendants violated

his procedural due process rights guaranteed by the Fourteenth Amendment. He claims that suspending him with pay, without any opportunity to review or challenge Dr. Favret's conclusion of "impaired judgment," deprived him of a property interest in his employment and a liberty interest in his reputation. The Magistrate Judge essentially found that because the plaintiff's suspension was "with pay," instead of without pay, he could not have been deprived of federal due process. The court agrees.

▅ "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Jenkins v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir.1990) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "[A]lthough a property interest in employment can be created by statute, ordinance, or express or implied contract, 'the sufficiency of the claim of entitlement must be decided by reference to state law.'" *Pittman v. Wilson County*, 839 F.2d 225, 226–27 (4th Cir.1988) (quoting *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

▅ Here, the plaintiff does refer to state law, Va.Code Ann. § 2.1–116.1 *et seq.* (Michie 1995 & Supp.2000) (the "Law–Enforcement Officers' Procedural Guarantees" statute), as the basis of his property interest in continued employment. While this state law provides the plaintiff with such an interest, *see Kersey v. Shipley*, 673 F.2d 730, 732 (4th Cir.1982), it also "provides for *more* process than what the Constitution would otherwise require." *Riccio v. County of Fairfax*, 907 F.2d 1459, 1467 (4th Cir.1990) (emphasis in original). For this reason, the specific procedures it establishes need not be complied with fully to satisfy *federal* due process. *See id.* at 1468 (holding, in Virginia county police

---

4. Dr. Favret does not challenge the proposition that she "may fairly be said to be a state actor." *American Mfrs. Mut. Ins. Co. v. Sulli-*

*van*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (internal quotation marks and citations omitted).

officer's § 1983 action against his department and various county officials, that "the Department's violation of the Law Enforcement Officers' Procedural Guarantees does not necessarily compel a finding of a due process violation.") Rather, to determine whether due process has been violated under the federal Constitution, "[a]lleged violations ... are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures." *Id.* at 1469.

■ Under the federal standard of what process is due, the plaintiff's suspension with pay did not violate the Fourteenth Amendment, even if it was a "suspension ... for punitive reasons," Va.Code Ann. § 2.1–116.5 (Michie 1995). *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 544–45, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (noting that an employer "can avoid the [due process] problem by suspending with pay" (footnote omitted)); *Royster v. Board of Trustees of Anderson County Sch. Dist. Number Five,* 774 F.2d 618, 621 (4th Cir.1985) (holding that "any constitutionally protected property interest [an employee has] as a result of his employment contract [is] satisfied by payment of the full compensation due under the contract"); *see also Edwards v. California Univ. of Pa.,* 156 F.3d 488, 492 (3d Cir. 1998) (neither suspension with pay nor resultant stigma to reputation unconstitutionally deprived plaintiff of property or liberty interests).

The plaintiff claims he was suspended with pay *following* an investigation, not *pending* an investigation, and he argues that the Constitution provides greater procedural protections in the former instance. As this argument is unsupported by any case law, the court rejects it. The plaintiff also claims that under the above logic, "county officials could, without due process implications, indefinitely suspend an officer and not allow him to practice his profession so long as he continued to receive base pay." Unfortunately for the plaintiff, he is correct. *See Royster,* 774 F.2d at 621

(public employee's property interest extends only to his "right to receive the compensation guaranteed under the contract," not to "the right to actively engage in and execute the duties of his office").

The plaintiff further argues that he was deprived of incidental benefits of the job, namely the off-duty use of a car, and the right to work overtime. The Fourth Circuit has expressed its "reluctan[ce] to recognize multiple property interests within the same employment relationship." *Fields v. Durham,* 909 F.2d 94, 98 (4th Cir.1990). Because "the constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services," *id.,* the plaintiff's argument fails. *See also Brown v. Brienen,* 722 F.2d 360, 362, 365 (7th Cir.1983) (addressing question of whether § 1983 claim is actionable "even though the employee has not been fired," and concluding that "[d]isputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment").

■ The court also rejects the plaintiff's argument that the dissemination of Dr. Favret's evaluation deprived him of a property interest in the privacy of that evaluation, as allegedly guaranteed by Virginia common law and statutory law. There is no general federal "right to privacy," except in matters relating to reproduction, contraception, abortion, and marriage. *See Edwards,* 178 F.3d at 252. As none of these matters is implicated in the present case, deprivation of other, state-created privacy interests cannot form the basis of a federal due process violation. *See Riccio,* 907 F.2d at 1469 ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."). With respect to Count Two, the plaintiff's objections shall be overruled, and the defendants' motions to dismiss granted. Count Two shall be dismissed from the complaint.

Having addressed the plaintiff's federal claims, the court now turns to his claims under state law.

## V.

The county defendants raise a threshold objection to the Magistrate Judge's recommendation that all of the state law claims not be dismissed. They argue that the court has no jurisdiction to hear any of the plaintiff's state law claims, because the plaintiff failed to allege that he presented his claims to the governing body of the County.

 Va.Code Ann. § 15.2–1248 (Michie 1997 & Supp.2000),[5] provides: "No action shall be maintained by any person against a county upon any claim or demand until such person has presented his claim to the governing body of the county." This statute and those prescribing the manner of appealing a governing body's decision to disallow a claim, *see* Va.Code §§ 15.2–1245 to –1247, "provide the exclusive procedure for litigating claims against a county. Failure to allege compliance with these statutes is fatal to an action against a county." *New Kent County v. Worley Aviation, Inc.*, 255 Va. 186, 496 S.E.2d 70, 74 (1998) (quoting *Burk v. Porter*, 222 Va. 795, 284 S.E.2d 602, 603 (1981)); *see also Karara v. County of Tazewell*, 450 F.Supp. 169, 172 n. 2 (W.D.Va.1978) (dismissing complaint for failure to follow these sections), *aff'd*, 601 F.2d 159 (4th Cir.1979) (per curiam); *Chesterfield County v. Town & Country Apartments & Townhouses*, 214 Va. 587, 203 S.E.2d 117, 120 (1974) (same, for failure to allege compliance), unless the County governing board refuses or neglects to act upon a claim duly pre-

sented to it. *See Board of Supervisors v. Miller & Smith, Inc.*, 222 Va. 230, 279 S.E.2d 158, 160 (1981).

 The Magistrate Judge found that § 15.2–1248 only applies to "persons other than its own employees in matters arising out of the employment relationship." (Report & Recommendation at 21.) The court disagrees, as the statute contains no such limitation.[6] On the contrary, the statute is very broad, encompassing "any person," and "any claim or demand." "The language, 'any claim or demand' is broad enough to embrace every character of claim, whether legal or equitable." *Fidelity & Deposit Co. of Md. v. Gill*, 116 Va. 86, 81 S.E. 39, 42 (1914). Following this logic and the statute's express application to "any person," the language of the statute also must embrace every character of plaintiff, be he county employee or private citizen. Only the Commonwealth itself has been held not to be a "person" under this statute. *See Commonwealth ex rel. Pross v. Board of Supervisors*, 225 Va. 492, 303 S.E.2d 887, 890 (1983) (citing rule that "[N]o statute of limitations has been held to apply to suits by the crown, unless there has been an express provision including it." (quoting *Levasser v. Washburn*, 52 Va. (11 Gratt.) 572, 576 (1854))).

 The court has found very few limitations on Va.Code §§ 15.2–1248. One is that it potentially bars only monetary claims, and not "proceedings for declaratory judgment and mandamus." *Nuckols v. Moore*, 234 Va. 478, 362 S.E.2d 715, 717 (1987) (holding that nonmonetary claims are not subject to these requirements). In this respect, Count Three is not subject to this statute, as only injunctive relief and

---

5. The statute previously was codified as Va. Code § 15.1–554 (1950), and as Va.Code § 844 (1904). No case has interpreted the current version of the statute.

6. The Magistrate Judge relied on *Dominion Chevrolet Co. v. Henrico County*, 217 Va. 243, 228 S.E.2d 131, 134 (1976), which stated that "[t]he statute relates to general claims and demands against a county arising out of

transactions, disputes and matters incident to the operation of the county by the board." This statement should be read as distinguishing "general claims" from the more "specific" tax claims the court found to be specially exempt from the jurisdictional requirements of § 15.2–1248, and not as a limitation upon what type of plaintiff is subject to those requirements.

mandamus may be obtained under that count. *See infra.* The plaintiff also argues that, by its terms, § 15.2–1248 potentially bars claims only against the County itself, and not against the individual defendants in their individual capacities, *e.g.,* for frauds committed outside the scope of their duties.[7] The court agrees. *See Burk,* 284 S.E.2d at 603 (holding that plaintiff's failure to allege compliance with these statutes did not bar his claim against members of county Board of Supervisors, "as individuals," for illegal expenditures of public funds). The plaintiff further contends that § 15.2–1248 does not operate to bar his federal claims. This does not appear to be in dispute, as the defendants' Rule 72 objections only raise the argument with respect to the state claims.

■ The plaintiff appears to concede that his claims against the County are subject to Va.Code §§ 15.2–1245 to –1248, having made no argument to the contrary. Rather, he asserts that he satisfied these statutory requirements—even if he neglected to so allege in the complaint—and asks for leave to amend. It appearing that Counts Four and Five constitute "any claim or demand" subject to the jurisdictional bar of Va.Code §§ 15.2–1245 to 15.2–1248; that alleging compliance with these statutes is a jurisdictional prerequisite to the maintenance of those claims against the County; that the plaintiff has not argued to the contrary; and that the plaintiff failed to allege that he so complied or that he duly presented his claim to the County and it refused or neglected to act upon it, the defendants' objections shall be sustained insofar as they relate to the County. Counts Four and Five shall be dismissed against the County, without prejudice.[8]

7. As shown *infra,* the plaintiff's fraud claim is the only remaining state claim he may maintain against the individual county defendants to which § 15.2–1248 might apply.

8. The court does not hereby grant the plaintiff leave to amend his complaint. The question of whether leave to amend should be granted is a separate inquiry, which involves a variety

## VI.

Count Three alleges that the defendants violated the plaintiff's common law and statutory privacy rights under state law, by disseminating Dr. Favret's evaluation to the individual county defendants. The plaintiff complains that despite this dissemination, he "was not permitted access to review, much less allowed to correct," the evaluation. (Compl. at 10 ¶ 52.)

■ The court begins by observing that Count Three only can be based on the Virginia Privacy Protection Act of 1976 (the "Privacy Protection Act"), Va.Code Ann. §§ 2.1–377, *et seq.* (Michie 1995 & Supp.2000). It cannot be based on any Virginia common law rights to privacy, as no such rights exist, *see Brown v. American Broad. Co.,* 704 F.2d 1296, 1302 (4th Cir.1983), or on the other statutory right of privacy provided for in the Virginia Code, *see* Va.Code Ann. § 8.01–40 (Michie 2000) (prohibiting the use of a person's name, portrait or picture, without his consent, for commercial purposes), which does not apply to the facts of this case.

■ The Privacy Protection Act "does not render personal information confidential. Indeed, the Act does not generally prohibit the dissemination of information. Instead, the enactment requires certain procedural steps ... to be taken in the collection, maintenance, use, and dissemination of such data." *Hinderliter v. Humphries,* 224 Va. 439, 297 S.E.2d 684, 688 (1982). While establishing various duties on the part of record-keeping "agencies," *see* Va.Code § 2.1–380, the Act provides the person about whom records are kept with various rights, *see id.* § 2.1–382, such

of considerations. *See* Fed.R.Civ.P. 15; *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 420 (4th Cir.2000) (holding that futility, prejudice, or bad faith may justify refusing to grant leave to amend). This inquiry is not presently before the court, and may be taken up by the Magistrate Judge at a later date.

as the right to notification when information is disseminated, *see id.* § 2.1–382(A)(2), "the right to inspect" all personal information gathered about him, *see id.* § 2.1–382(A)(3), and the right to "challenge, correct, or explain information about him." *See id.* § 2.1–382(A)(5). Only injunctive relief and mandamus are available under the Privacy Protection Act. *See id.* § 2.1–386; *Hinderliter*, 297 S.E.2d at 688. The plaintiff's claim for damages under Count Three accordingly shall be stricken from the complaint.

The Magistrate Judge found that the plaintiff failed to state a claim that Dr. Favret's report was improperly disseminated, *see id.* § 2.1–380(A)(1), but that he did state a claim against the County for violating his right to correct any inaccurate information contained therein. The Magistrate Judge also found that the individual defendants are not subject to the Privacy Protection Act, because they cannot be considered "agencies" as defined in § 2.1–379(6). He accordingly recommended that Count Three be dismissed against all defendants except the County.

■ The plaintiff first objects to the Magistrate Judge's finding that none of the individual defendants may be held liable under the Privacy Protection Act because they are not "agencies" under § 2.1–379(6). The Act only creates duties on the part of an "agency," which essentially is defined as any governmental unit within the Commonwealth of Virginia, *see id.* § 2.1–379(6), such as "[p]olice department[s], County Executive[s], and ... count[ies]." *Hinderliter*, 297 S.E.2d at 689. The term "agency" under this statute also includes representatives, or agents, of those agencies. *See id.* (describing Chief of Police and County Executive as "representing the 'agencies' accused of improper distribution"; describing the County Board of Supervisors as an "agency," *"in the person of* Humphries in her official capacity," and *"personified by* Humphries in her official capacity" (emphasis added)). Therefore, the plaintiff's

first objection shall be sustained as to each of the individual county defendants, who are subject to the Privacy Protection Act in their official capacities, as representatives of their respective agencies.

■ A different question arises with respect to Dr. Favret. While she certainly may be considered a representative or agent of the company for which she works, Behavioral Healthcare Futures ("BHF"), the question of whether she is subject to the Privacy Protection Act depends on whether BHF may be considered an "agency," even though it is not a governmental entity. For a private entity to qualify as an agency, it must have "entered into a contractual relationship [with a governmental entity] for the operation of a system of personal information to accomplish an agency function." Va.Code Ann. § 2.1–379(6). The plaintiff did not allege that either Dr. Favret or BHF contracted with the County to operate a "system" of maintaining personal information. *See id.* § 2.1–379(1) (defining "system"). At most, he alleges that BHF has a contractual relationship with the County to maintain a file on a single "data subject," *i.e.* the plaintiff. The court finds that contracting to maintain information on one data subject is insufficient to constitute contracting to maintain a system for the purpose of accomplishing an agency function. Accordingly, neither BHF nor Dr. Favret as its representative meet the statutory definition of "agency," and neither is subject to an injunction or mandamus under the Privacy Protection Act. In this respect, the plaintiff's objections shall be overruled. Count Three shall be dismissed as it relates to Dr. Favret, with prejudice.

■ The plaintiff also objects to the Magistrate Judge's finding that "dissemination of plaintiff's records to his supervisors, the psychologist and his legal counsel does not make out any violation" of the Privacy Protection Act. (Pl.'s Objs. at 18.) The plaintiff states that "[t]here was no 'clearly established' 'need to collect the

information,'" (Pl.'s Objs. at 34), apparently referring to § 2.1–380(A)(1), which requires an agency to "[c]ollect, maintain, use, and disseminate only that personal information permitted or required by law to be so collected, maintained, used, or disseminated, or necessary to accomplish a proper purpose of the agency." This is the subsection that was examined by the Supreme Court of Virginia in *Hinderliter.* See 297 S.E.2d at 688–90. The court held that it is not the defendants' burden to prove that collecting or disseminating the information was necessary to accomplish a proper purpose; rather, "the burden was on the plaintiff to establish a *lack* of necessity or an improper purpose for the dissemination." *Id.* at 689 (emphasis added). This is so because "[t]here is a presumption that public officials will obey the law," which presumption "stands until rebutted by contrary evidence." *Id.*

The plaintiff alleged facts sufficient to carry his burden of establishing that the collection, maintenance, use, or dissemination of the information was not necessary to accomplish a proper purpose of the agency.[9] The complaint alleges that the defendants sought Dr. Favret's evaluation "to obtain thereby some method for chilling further statements" critical of the Department and county employees. (Compl. at 5 ¶ 24.) Collecting, using, and disseminating private information to chill an individual's right to freedom of speech is not a proper purpose for collecting that information. Count Three accordingly shall not be dismissed insofar as it alleges a violation of § 2.1–380(A)(1), and in this respect the plaintiff's objection shall be sustained.

■ The court also finds that the complaint sufficiently alleges violations of the Privacy Protection Act under Va.Code §§ 2.1–378(B)(4) (information shall not be obtained through fraudulent or unfair

means) and 2.1–382(A)(1) (an individual asked to supply personal information shall be informed about whether he is legally required to do so, and about the specific consequences of providing or not providing such information). The plaintiff claims that the defendants conspired to obtain the evaluations from Dr. Favret by falsely representing that their purpose was to determine whether he could be reimbursed for counseling costs, (*see* Compl. at 10 ¶¶ 48–51), while the true purpose was to obtain a method for chilling his future speech. Allegations that the defendants induced the plaintiff to see Dr. Favret based on what they knew to be false premises are sufficient to sustain a claim that the psychological information about him was "obtained by fraudulent or unfair means." Va.Code § 2.1–378(B)(4). Allegations that he was misinformed about the specific consequences of providing the information are sufficient to sustain a claim for violations of 2.1–382(A)(1).

■ The county defendants object to the Magistrate Judge's finding that the County may be held liable for violating the plaintiff's right to correct inaccurate information in Dr. Favret's report, arguing that he never asked the County if he could do so. The defendants correctly observe that an individual's rights to inspect his personal files and to correct inaccurate information contained therein are not triggered until he first notifies the appropriate agency that he wishes to do so. *See* Va.Code § 2.1–382(A)(3) (right to inspect is triggered only "upon request"); § 2.1–382(A)(5) (right to have inaccurate information corrected is triggered only if individual "gives notice" that he wishes to do so). However, the plaintiff alleges that he "was at all times totally denied access to any aspect of the 'evaluation.'" (Compl. at

---

9. Although the Magistrate Judge based his finding to the contrary on *Hinderliter,* the evidence in that case established that the officer's report was disseminated pursuant to "legitimate official requests." 297 S.E.2d at 689. The *Hinderliter* court itself distinguished situations involving an improper purpose, as alleged in the case at bar, finding that a member of the county Board of Supervisors violated the Act by disseminating the report to her daughter, to assist in the prosecution of her lawsuit against the officer.

6 ¶ 29.) Under the liberal pleading standards of the Federal Rules of Civil Procedure, a reasonable inference can be drawn that the plaintiff was "totally denied" access because he asked the appropriate agencies to review the evaluation and to correct inaccurate information contained therein. If he did not, (*e.g.*, if he only asked Dr. Favret and BHF, who are not "agencies" under the statute), the defendants may prove that fact later in the proceedings. The county defendants' objection accordingly shall be overruled in this respect, and Count Three shall not be dismissed insofar as it is based on Va.Code §§ 2.1–382(A)(3) or (A)(5).

In summary, the court finds that the plaintiff sufficiently alleged a claim under §§ 2.1–378(B)(4), –380(A)(1), –382(A)(1), –382(A)(3), and –382(A)(5) of the Privacy Protection Act. The court does not pass on any other subsections of the Act at this time. Count Three shall not be dismissed against the county defendants. It shall be dismissed with prejudice against Dr. Favret, as neither she nor BHF is an agency as defined by the statute. The damages claim in Count Three shall be stricken from the complaint, as only injunctive relief and mandamus are available under the Privacy Protection Act.

## VII.

 Count Four alleges state law claims for actual and constructive fraud, against all defendants except Dr. Favret. "To sustain a claim of actual fraud, the plaintiff must prove a false representation, of a material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage. Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it." *ITT Hartford Group, Inc. v. Virginia Fin. Assocs., Inc.*, 258 Va. 193, 520 S.E.2d 355, 361 (1999) (internal quotation marks and citations omitted).

The plaintiff alleged that: (1) the defendants' representation concerning the purpose of his visit to Dr. Favret "was false," (Compl. at 10 ¶ 49); (2) all of the defendants knew the representation was false when it was stated, (*see* Compl. at 10 ¶¶ 51–52); (3) in reliance upon the representation, the plaintiff "dutifully reported to Dr. Favret and met with her several times," (Compl. at 5 ¶ 22); and (4) as a result, he was suspended with pay for having "impaired judgment and related behaviors," and the above-described conditions were imposed on his employment. The plaintiff accordingly has pled an actionable claim for actual and constructive fraud under Virginia law. The court agrees with the Magistrate Judge that, to the extent this fraud claim essentially is based upon allegations of negligent breach of contract, "it would not be appropriate to require election at this early stage of the process." (Report & Recommendation at 19.)

The county defendants object to the Report and Recommendation because the Magistrate Judge referred to "fraud in the inducement," and they contend the plaintiff failed to state a claim for fraud in the inducement. As shown above, the plaintiff need not rely on such a theory, having sufficiently pled actual and constructive fraud, the specific theories of fraud cited in the complaint. In this respect, the defendants' objections shall be overruled, and their motions to dismiss denied. However, the claim shall be dismissed without prejudice against the County, due to the jurisdictional bar discussed above.

## VIII.

Count Five alleges a state law breach of contract claim against all defendants except Dr. Favret. The Magistrate Judge recommended dismissal of this claim, except against the County. As no party objected to this recommendation, *see* Fed. R.Civ.P. 72(b), the court adopts it, and shall dismiss Count Five with prejudice against all defendants except the County.

However, given the jurisdictional bar described above, this claim cannot be maintained against the County as it currently is pled. Count Five shall be dismissed without prejudice against the County.

## IX.

In conclusion, the court finds as follows. Count One shall be dismissed as it relates to the First Amendment retaliation claim, but not as it relates to the prior restraint imposed by the Plan of Assistance. The individual defendants are not entitled to qualified immunity under Count One. Count Two shall be dismissed for failure to state a claim under the federal Due Process Clause of the Fourteenth Amendment. The claim for damages in Count Three shall be stricken from the complaint, because the only relief available under the Virginia Privacy Protection Act is injunctive relief and mandamus. Count Three shall be dismissed with prejudice against Dr. Favret, because only "agencies" are subject to the Virginia Privacy Protection Act; it shall not be dismissed against the other defendants. Counts Four and Five shall be dismissed without prejudice against the County, due to the plaintiff's failure to allege compliance with the statutory prerequisites for suing a county. Count Five shall be dismissed with prejudice against all of the individual defendants. The plaintiff's only remaining claims are Counts One, Three, and Four (only Count One against Dr. Favret; Counts One and Three against the County; and Counts One, Three, and Four against the individual county defendants).

An appropriate Order this day shall issue.

### ORDER

By order dated June 7, 2000, this case was referred to the presiding United States Magistrate Judge for proposed findings of fact and a recommended disposition of the motions to dismiss filed May 24, 2000 and June 2, 2000. The Magistrate Judge issued his Report and Recommendation on August 14, 2000. He recommended that the court dismiss the plaintiff's complaint in its entirety. The plaintiff and the county defendants filed timely objections pursuant to Federal Rule of Civil Procedure 72. Briefs of *amicus curiae* were filed by the Thomas Jefferson Center for the Protection for Free Expression, to which the county defendants responded. The court has reviewed *de novo* those portions of the report or specified proposed findings or recommendations as to which objection was made. *See* 28 U.S.C. § 636(b)(1) (West 1993 & Supp.2000). For the reasons stated in the accompanying Memorandum Opinion, it is accordingly this day

### ADJUDGED, ORDERED, AND DECREED

as follows:

1. The proposed findings and recommendations of the August 14, 2000 Report and Recommendation shall be, and they hereby are, ACCEPTED IN PART, ADOPTED IN PART, and REJECTED IN PART;

2. The plaintiff's objections to the Report and Recommendation shall be, and they hereby are, OVERRULED IN PART and SUSTAINED IN PART;

3. The defendants' objections to the Report and Recommendation shall be, and they hereby are, OVERRULED IN PART and SUSTAINED IN PART;

4. The defendants' motions to dismiss, filed May 24, 2000 and June 2, 2000, shall be, and they hereby are, GRANTED IN PART and DENIED IN PART, as set forth in the accompanying Memorandum Opinion;

5. Count One of the plaintiff's Complaint shall be, and it hereby is, DISMISSED IN PART, WITH PREJUDICE, as set forth in the accompanying Memorandum Opinion;

6. Count Two of the plaintiff's Complaint shall be, and it hereby is, DISMISSED WITH PREJUDICE;

7. Count Three of the plaintiff's Complaint shall be, and it hereby is, DISMISSED WITH PREJUDICE as to defendant Favret; the claim for damages in Count Three shall be, and it hereby is, STRICKEN from the complaint;

8. Count Four of the plaintiff's Complaint shall be, and it hereby is, DISMISSED WITHOUT PREJUDICE as to the County of Albemarle;

9. Count Five of the plaintiff's Complaint shall be, and it hereby is, DISMISSED WITHOUT PREJUDICE as to the County of Albemarle, and DISMISSED WITH PREJUDICE as to the remaining defendants.

The Clerk of the Court hereby is directed to send a certified copy of this Order and the accompanying Memorandum Opinion to the Magistrate Judge and to all counsel of record.